The State Board of Education; Ed Richardson, in his official capacity as State Superintendent of Education; Robert L. Childree, in his official capacity as comptroller of the State of Alabama; the Teachers' Retirement System of Alabama; and all city and county school districts in Alabama, including their superintendents, in their official capacities (those entities and individuals are hereinafter referred to as the "Board"), appeal from a September 6, 2001, order of the trial court awarding attorney fees to the plaintiff, Ronald Waldrop, as representative of a class of Alabama schoolteachers. The trial court awarded Waldrop $287,500 in attorney fees based upon the "common-benefit" exception to the American rule governing the recovery of attorney fees. We reverse the trial court's order requiring the Board to pay Waldrop's attorney fees.
 Background
Waldrop, a teacher in Fayette County, learned that in 1995 the Alabama Legislature had passed Act No. 95-314, Ala. Acts 1995, known as the Foundation Program Fund Act and codified at § 16-13-230 et seq., Ala. Code 1975 (amended in 1997) (the act before its amendment is hereinafter referred to as "the Foundation Act"). The Foundation Act set standards for the adoption by the State Board of Education of a "salary matrix" for public schoolteachers in the State based upon their "degree level, certification, and public education experience." § 16-13-231.
However, the Foundation Act also permitted the State Board of Education to vest in the local boards the discretion to pay teachers less than 100% of the amount established in the salary matrix, even though the local boards received from the Legislature sufficient funds with which to pay the salaries at 100%. Under the Foundation Act, local boards were required to pay no less than 95% of the salary amounts specified in the "state salary matrix by cell"; they could withhold up to 5% from the teachers' salaries. Because many local boards exercised this discretion and withheld the 5%, teachers possessing the same qualifications, degrees, and experience levels were being paid different salaries throughout the State.
In the summer of 1996, Waldrop contacted the Alabama Education Association *Page 895 
("AEA"), complaining that the Foundation Act conflicted with §16-24-4, Ala. Code 1975, which provided then, and which still provides, that "no salary schedule shall operate to compensate teachers in less sums than the sums contained in a minimum salary schedule" adopted by the State Board of Education. Waldrop contended that Dr. Paul Hubbert, the executive director of the AEA, told Waldrop that nothing could or would be done about Waldrop's concerns.
In September 1996, Waldrop filed an action in federal court, alleging that the discretion granted the local boards of education by the Foundation Act constituted an equal-protection violation pursuant to42 U.S.C. § 1983. Waldrop and the defendants subsequently entered into a joint stipulation, agreeing to dismiss, without prejudice, the pending federal action.[1]
On February 18, 1997, Waldrop filed an action in the state court, in which he asserted the same claims alleged in his federal action. He sought a judgment declaring a portion of the Foundation Act unconstitutional, backpay with interest, and an award of attorney fees and costs.
According to testimony before the trial court, shortly after Dr. Hubbert's meeting with Waldrop, the AEA proposed legislation that would modify the Foundation Act to eliminate that portion of the Foundation Act that granted a local board discretion to pay its teachers less than the State-mandated salary. This legislation was introduced in the Legislature on February 4, 1997, two weeks before Waldrop filed his state-court action. The legislation was approved by the Governor on April 29, 1997, see Act No. 97-238, Ala. Acts 1997 (codified at § 16-13-231.1, Ala. Code 1975), after Waldrop had initiated his state-court action but before anything of substance had occurred in the action.
On October 19, 1998, more than one and one-half years after the amendment to the Foundation Act became law, the trial court entered a summary judgment in Waldrop's state-court action, declaring unconstitutional that portion of the Foundation Act that granted local boards the discretion to pay teachers an amount less than the State-mandated salary. The trial court then set a hearing to address damages for the plaintiff class and to address all pending motions. This hearing was held on January 8, 2001.
On February 6, 2001, the trial court issued a "Final Order"; that order stated that it resulted from a "final hearing on all pending matters." In that order, the trial court reaffirmed its holding as to the unconstitutionality of the Foundation Act and calculated damages for the plaintiff class at $91,508,074. The trial court, however, held that it was precluded from awarding the damages of $91,508,074, because the Board was protected by sovereign immunity from an award that would impact the State treasury. The trial court's order also indicated that "all costs are taxed to Defendants." The trial court's order was silent on Waldrop's request for an attorney-fee award.
Waldrop filed a Rule 59, Ala.R.Civ.P., motion, to alter, amend, or vacate the judgment; in his motion, Waldrop requested that the trial court reconsider its refusal to award damages to the plaintiff class. Waldrop's motion did not request the trial court to reconsider his claim for attorney fees. The trial court denied Waldrop's Rule 59 motion by an order entered on March 14, 2001. *Page 896 
On April 26, 2001, Waldrop filed a notice of appeal, challenging the trial court's finding that sovereign immunity barred the award of damages against the Board. The Board cross-appealed and filed a motion to dismiss, on the basis that Waldrop's appeal was untimely. Waldrop subsequently withdrew his notice of appeal, asserting that because the trial court had not disposed of his pending request for attorney fees, the February 6, 2001, order was not a final order and therefore was not appealable.
On June 21, 2001, Waldrop moved the trial court for a hearing on his attorney-fee request. The trial court granted this motion. Waldrop's request for attorney fees was argued before the trial court on August 13, 2001; no ore tenus evidence was presented at this hearing.
On September 6, 2001, the trial court entered an order awarding Waldrop and members of the plaintiff class attorney fees. The trial court concluded that Waldrop's action had prompted the Legislature to amend the Foundation Act and that the action had benefited the general public and rendered a public service.
The trial court, using the lodestar method to calculate the fee, awarded attorney fees to Waldrop's counsel in the amount of $287,500 and expenses in the amount of $13,303. The court's award was based upon arguments made before the court and time sheets either submitted to the trial court or discussed with the trial court during the hearing on the attorney-fee award. Waldrop's two attorneys stated that they had spent a combined 667.6 hours on this litigation (which has been pending since 1996) and that their regular hourly rates were $200 and $150, respectively. Using these figures, the trial court calculated an attorney fee of $115,000 and applied a multiplier of 2.5 to this figure.
The Board appeals, asserting that the trial court's award of attorney fees is improper because, it argues, (1) no common benefit resulted from Waldrop's action; (2) if any common benefit did result, the benefit occurred upon the Governor's signing into law the amendment to the Foundation Act, and the fees awarded to Waldrop's counsel were generated after that time; (3) 30 days after the entry of the February 6, 2001, order, the trial court lost subject-matter jurisdiction over the issue of attorney fees; (4) the doctrine of sovereign immunity bars an award of attorney fees against the Board in this case; and (5) Waldrop failed to carry his burden of proof in establishing his claim for attorney fees.
 Standard of Review Applicable to a Trial Court's Attorney-Fee Award
This Court has previously recognized that "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." Ex parte Edwards, 601 So.2d 82, 85 (Ala. 1992), citingVarner v. Century Fin. Co., 738 F.2d 1143 (11th Cir. 1984). See also KnoxKershaw, Inc. v. Kershaw, 598 So.2d 1372 (Ala. 1992); Lanier v.Moore-Handley, Inc., 575 So.2d 83 (Ala. 1991).
However, the Board argues that a de novo review is appropriate in this case. The Board relies upon Ex parte Horn, 718 So.2d 694, 705 (Ala. 1998) (addressing an attorney-fee award by the trial court), in which this Court stated:
 "[W]here a trial court does not receive evidence ore tenus, but instead makes its judgment based on the pleadings, exhibits, and briefs, the ore tenus
standard's presumption of correctness does not apply to the trial court's factual findings and it is the duty of the appellate court to judge the evidence de novo." *Page 897 
As in Ex parte Horn, the trial court in this case did not receive ore tenus evidence regarding Waldrop's request for an award of attorney fees. Thus, we review de novo the trial court's award of attorney fees, and the trial court's findings of fact on that issue carry no presumption of correctness.
 Background of the "Common-Benefit" Exception to the American Rule
In Ex parte Horn, this Court stated:
 "Under the American rule, the parties to a lawsuit bear the responsibility of paying their own attorney fees. However, the law recognizes certain exceptions to this rule, and attorney fees are recoverable when authorized by statute, when provided by contract, or when justified by special equity. In the latter instance, attorney fees may be awarded where the plaintiff's efforts are successful in creating a fund out of which the fees may be paid, or when the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interests of the plaintiff. These have been termed the `common fund' and `common benefit' exceptions to the American rule."
718 So.2d at 702 (citations omitted). See also Alyeska Pipeline Serv.Co. v. Wilderness Soc'y, 421 U.S. 240, 257-59 (1975) (recognizing common-law exceptions, including the common-benefit exception, to the American rule); Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980) (recognizing that the common-fund exception "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense").
Under the common-benefit exception, a court may award attorney fees "`when the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interests of the plaintiff.'" Campbell v. General Motors Corp.,19 F. Supp.2d 1260, 1269 (N.D.Ala. 1998), quoting Ex parte Horn, 718 So.2d at 702. In Campbell, the United States District Court for the Northern District of Alabama stated:
 "The key difference [between the common-fund exception and the common-benefit exception] is that [for the common-benefit exception to apply] no common fund need be created. In fact, fees can be awarded where the benefit bestowed is non-pecuniary, see Bell v. Birmingham News Co., 576 So.2d 669, 670 (Ala.Civ.App. 1991); Barton v. Drummond Co., 636 F.2d 978 (5th Cir. Unit B 1981), and the Alabama Supreme Court has awarded fees in several cases where there was no monetary recovery at all. See, e.g., Brown v. State, 565 So.2d 585, 591-92 (Ala. 1990). Fees are typically assessed directly against the defendant. While the precise contours of common benefit recovery are far from clear, plaintiffs have sought relief which may benefit the public at large, and so might be entitled to a payment of the fees by the defendants based on the common benefit theory."
Campbell, 19 F. Supp.2d at 1269-70 (some citations omitted). In a footnote to this text, the Campbell Court recognized that
 "[g]enerally, federal courts have carefully hemmed in the common benefit doctrine, applying it only where the fees, though paid for by the defendant, are somehow distributed over those benefitted by the plaintiffs' actions. . . . While the Alabama courts have so far applied the doctrine principally against government entities, for which the same principle would apply, see, e.g., Horn, supra; *Page 898 Brown, supra; Bell, supra, the court has never said so explicitly."
Campbell, 19 F. Supp.2d at 1270.
In Ex parte Horn, supra, neighborhood residents sued the City of Birmingham; the action ended with the entry of a consent judgment. Under that consent judgment, the City of Birmingham agreed to require sanitary-waste collectors to obtain approval from the city council before they constructed garbage transfer stations near residential neighborhoods. The trial court awarded attorney fees to the plaintiffs' attorney, and the City of Birmingham appealed. The Court of Civil Appeals reversed.
However, on certiorari review, this Court found that the residents' lawsuit had resulted in substantial relief to the entire City of Birmingham by ending an improper practice. This Court reversed the judgment of the Court of Civil Appeals and concluded that the residents were entitled to recover attorney fees. See also Brown v. State,565 So.2d 585, 591-92 (Ala. 1990) (in an action against the State of Alabama and the City of Montgomery arising out of improperly verified traffic tickets, this Court awarded attorney fees to plaintiffs' counsel because the action resulted in a significant contribution to the integrity of the system of jurisprudence and because the lawsuit ended an improper practice; "The fact that this litigation . . . has not produced a monetary recovery does not preclude an award of attorney fees."). See also Wyatt v. Stickney, 344 F. Supp. 387 (M.D.Ala. 1972) (plaintiffs in a class action against the State Mental Health Board alleging unconstitutional treatment at a school for the mentally ill were awarded attorney fees under the common-benefit exception; recognizing that bringing an end to unconstitutional policies and procedures at the school benefited the public good and that the most logical way to spread the burden of the litigation would be to grant the attorney fees), aff'd inpertinent part, and remanded, and decision reserved in part, Wyatt V.Aderholt, 503 F.2d 1305 (5th Cir. 1974); NAACP v. Allen, 340 F. Supp. 703,708-09 (M.D.Ala. 1972) (in an employment-discrimination case against the Alabama Department of Public Safety, the federal district court stated that "[w]hen plaintiffs, through the prosecution of a lawsuit, benefit the class they represent and effectuate a strong congressional policy, they are entitled to attorneys' fees regardless of the defendants' good or bad faith. Indeed, under such circumstances, the award loses much of its discretionary character and becomes a part of the effective remedy a court should fashion to encourage public-minded suits and to carry out congressional policy." (citations omitted)).
 Issues and Discussion I. Did the trial court have jurisdiction to enter the attorney-fee award?
We begin by addressing the Board's argument that the trial court lacked jurisdiction to enter the attorney-fee award. The Board points out that the trial court's February 6, 2001, order was styled as a "Final Order" and stated that it was issued after a "final hearing on all pending matters." Although Waldrop's request for attorney fees was pending when the trial court issued the order, the order neither addressed Waldrop's request for attorney fees[2] nor reserved that issue for later consideration. The Board asserts that the trial court's final order, through its silence, *Page 899 
implicitly denied Waldrop's request for attorney fees and thus disposed of all claims.
The Board further asserts that, in order to place that issue before the trial court again, Waldrop should have requested, pursuant to Rule 59, Ala.R.Civ.P., that the trial court alter, amend, or vacate the February 6, 2001, order as to the issue of attorney fees. Although Waldrop filed a Rule 59 motion, he did not raise the attorney-fee issue in that motion. Thus, the Board asserts, 30 days after the entry of the February 6, 2001, order, the trial court lost jurisdiction to reconsider its denial of attorney fees.
Waldrop responds by arguing that the February 6, 2001, order was not a "final order" because, he says, the order did not dispose of all claims (i.e., the trial court did not address his pending request for attorney fees) and the trial court did not specifically direct that a final judgment be entered on less than all claims, pursuant to Rule 54(b), Ala.R.Civ.P. Waldrop asserts that the trial court's September 6, 2001, order is the final, and therefore appealable, order.
The trial court agreed with Waldrop. At the August 13, 2001, hearing on Waldrop's request for attorney fees, the trial judge insisted that his February 6, 2001, order was not a final order, and, when confronted with the fact that that order was captioned "Final Order," he emphatically denied that he intended it to be a final order at that time. The trial judge stated: "My final order was going to be after we cleared up this issue of attorneys' fees. I can tell you that right now. And if I did that [called the February 6, 2001, order a final order], that was inadvertently done; if I said final order. Why would I say final order and leave the attorneys' fees out there hanging? . . . I didn't intend to do it. That was not my intent."
We begin our analysis of the jurisdictional issue by recognizing that a decision on the merits disposing of all claims is a final decision from which an appeal must be timely taken, whether a request for attorney fees remains for adjudication. Budinich v. Becton Dickinson Co.,486 U.S. 196, 199-200 (1988). Indeed, this Court has already concluded that the February 6, 2001, order entered in this case was a final decision on the merits. When the Board filed this appeal, Waldrop filed a cross-appeal. In that cross-appeal, Waldrop challenged the correctness of that portion of the trial court's February 6, 2001, order refusing to award damages against the Board. The Board moved to dismiss Waldrop's cross-appeal, asserting that because Waldrop's notice of cross-appeal was not filed within 42 days of the entry of the judgment he was appealing from, i.e., the judgment entered on February 6, 2001, Waldrop's appeal from that decision was untimely.
We agreed, and on December 19, 2001, we dismissed Waldrop's cross-appeal. We reached this conclusion even though the trial court had not entered a Rule 54(b) certification stating that the February 6, 2001, order was a final order. Thus, this Court has already concluded that the February 6, 2001, order was a final, appealable order.
This fact, however, does not completely resolve the issue whether a trial court — after it has issued a final order on the merits and awarded costs — may consider a request for attorney fees, where the attorney-fee issue was pending at the time the case was decided on the merits but was not expressly reserved for later consideration. Although the trial court labeled its February 6, 2001, order as a "Final Order," the trial court subsequently announced that it did not intend to issue a *Page 900 
final order until after the issue of attorney fees "was cleared up." These comments by the trial judge could be interpreted as a nunc protunc amendment of its judgment; if that is the case, the trial court was not divested of jurisdiction when it issued its order awarding attorney fees.
Additionally, in light of the record before us, we will not interpret the trial court's silence in its February 6, 2001, order as to Waldrop's request for attorney fees as a denial of that request. However, we note that, under different circumstances, a trial court's silence might be construed as a denial of a pending request. See, e.g., Lambert v. LisantiFoods, Inc., 624 So.2d 625 (Ala.Civ.App. 1993) (the trial court's judgment, which was silent as to the plaintiff's claim alleging retaliatory discharge, was taken to be a denial or rejection of that claim).
Because we are inclined to reach the merits of the issue whether the trial court properly awarded attorney fees, we are unprepared to dispose of this case on the murky issue whether the trial court lacked jurisdiction to enter its September 6, 2001, order awarding attorney fees. We therefore address the issue whether Waldrop's lawsuit resulted in a common benefit.
II. Did Waldrop's lawsuit result in a common benefit?
The Board challenges the trial court's award of attorney fees under the common-benefit exception, asserting that Waldrop's lawsuit did not result in a common benefit to the general public. The trial court held that Waldrop's efforts resulted in a common benefit to Waldrop and to the general public and that Waldrop's lawsuit rendered a public service. However, the record does not support this conclusion.
First, Waldrop presented absolutely no evidence tending to establish any relationship between the filing of this action and the amendment of the Foundation Act. Waldrop argued that his contact with the AEA and with Dr. Hubbert, the filing of his federal lawsuit, and the subsequent filing of this state-court action all combined to bring about the amendment to the Foundation Act. However, the record before this Court contains no evidence of the filing or the disposition of Waldrop's federal lawsuit, and we therefore do not consider that lawsuit.
Even if the record adequately documented Waldrop's prior lawsuit and we accepted the argument that his filing of the federal lawsuit was the catalyst that prompted the AEA to review its position regarding the Foundation Act, this Court has previously rejected a similar argument inBattle v. City of Birmingham, 656 So.2d 344 (Ala. 1995). In Battle, the Court affirmed the trial court's refusal to award attorney fees under a common-benefit theory, explaining that the arguments of the party seeking the fee "appl[ied] solely to her efforts" in another case and that she had "failed to show that her efforts in this case resulted in any benefit to the general public that would support an award of attorney fees." 656 So.2d at 347 (first emphasis in original; second emphasis added). See also Buckhannon Bd. Care Home, Inc. v. West Virginia Dep't ofHealth Human Res., 532 U.S. 598 (2001) (rejecting an award of attorney fees under a "catalyst theory," i.e., where the plaintiff's lawsuit brought about a voluntary change in the defendant's conduct).
Second, it is significant to note that Representative Bill Fuller introduced the legislation proposing the amendment on February 4, 1997, the first day of the regular legislative session, while Waldrop's state-court action was not filed until February 18, 1997, some two weeks later. Thus, *Page 901 
even Waldrop's state-court action lacks any causal relationship to the proposed amendment. At the hearing before the trial court on the attorney-fee issue, Waldrop's counsel essentially admitted that there was no evidence indicating such a causal relationship:
 "Of course, Dr. Hubbert is going to say that it's not. Of course, Bill Fuller is going to say that it's not. You're never going to get a direct admission in this important case as to what wheels are turning where to bring what benefits about. But we believe it's almost res ipsa loquitur as far as the time sequence there."
The deposition testimony of Dr. Hubbert and Representative Fuller was the only evidence submitted at the hearing on the attorney-fee issue. As Waldrop's counsel admitted, both Dr. Hubbert and Representative Fuller denied that the filing of Waldrop's lawsuit or his contact with the AEA had had any impact upon the drafting of, the lobbying for, or the passage of the amendment to the Foundation Act.
Accordingly, the trial court's finding that Waldrop's lawsuit resulted in a common benefit is unsupported by any evidence; the trial court could only have speculated as to what prompted the Legislature to amend the Foundation Act. Although we agree that Waldrop's complaints to the AEA may have highlighted the deficiencies in the Foundation Act, merely highlighting a deficiency in a statute does not, without evidence of a more direct influence, rise to the level of prompting a correction of that deficiency. We cannot allow speculation to satisfy a narrow exception to the American rule and to create an entitlement to attorney fees, especially where substantial, uncontroverted evidence to the contrary has been presented.
Additionally, to justify an award of attorney fees under the common-benefit exception, the litigation must result in a benefit not only to the plaintiff, but also to the general public. See Boeing Co. v.Van Gemert, 444 U.S. at 478; Campbell v. General Motors Corp.,19 F. Supp.2d at 1269-70 (recognizing that the purpose underlying an award of attorney fees under the common-benefit exception is to spread the cost of the benefit over those benefited); see also Ex parte Horn, supra (spreading the cost of the benefit over the citizens of Birmingham because all citizens benefited from the consent judgment in favor of the plaintiff); Brown v. State, supra (spreading the cost of the benefit over state taxpayers because all taxpayers benefited from the judgment in favor of the plaintiff).
In this case, Waldrop and certain other public schoolteachers benefited from the amendment to the Foundation Act. However, Waldrop and those schoolteachers are not the ones being asked to pay for that benefit. The trial court's award of attorney fees against the Board attempts to charge the costs associated with Waldrop's lawsuit to the State Board of Education and the local boards of education. Nothing suggests that the State Board and the local boards benefited from the amendment to the Foundation Act. Thus, the Board is not the proper group over which to spread the costs associated with Waldrop's litigation.
Finally, even if we attributed some tangential benefit to the Board as a result of the amendment to the Foundation Act, the Board would be required to pay Waldrop's attorney fees with funds from its annual budget. That money is allocated to the Board for the purpose of educating children enrolled in Alabama's public schools. Thus, any award of attorney fees against the Board reduces the funds available for *Page 902 
that purpose. We cannot conclude that Waldrop's litigation benefited all children enrolled in Alabama's public schools to the level required to justify an attorney-fee award under the common-benefit exception. The benefit, if any, inuring to the Board and the children enrolled in public schools as a result of Waldrop's lawsuit is more than offset by the reduction in funds that would be available for public education if the Board were required to pay the attorney fees. We conclude that an award of attorney fees under the common-benefit exception is inappropriate in this case.
We do not hold that attorney fees may never be awarded against the State Board of Education or against the local boards under a common-benefit theory. We simply conclude that the benefit, if any, resulting from Waldrop's lawsuit did not justify an award of attorney fees against the Board in this case.
 Conclusion
We conclude that an award of attorney fees under the common-benefit theory is inappropriate in this case. We reverse the trial court's order of September 6, 2001, and remand this case for the trial court to enter a judgment denying Waldrop's request for attorney fees.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MOORE, C.J., and HOUSTON, BROWN, and HARWOOD, JJ., concur.
SEE and LYONS, JJ., concur specially.
WOODALL, J., concurs in the result.
[1] Although the record contains no documentation of this federal action, the parties refer to the federal lawsuit in their briefs filed with this Court.
[2] In the order, the trial court stated that "all costs are taxed to Defendants." The Board notes that the use of the term "costs," without more, does not encompass attorney fees. Mass Appraisal Servs., Inc. v.Carmichael, 372 So.2d 850, 852 (Ala. 1979).