On Application for Rehearing
The opinion of March 21, 2003, is withdrawn, and the following opinion is substituted therefor. *Page 200 
These parties have been before this court before. Legal Environmental Assistance Foundation, Inc. ("LEAF"), sued the Alabama Department of Environmental Management ("ADEM"), alleging that ADEM had failed to follow the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala. Code 1975 ("the AAPA"), in promulgating its Implementation Procedures for Tier 2 of theAntidegradation Policy, Ala. Admin. Code (ADEM), Rule335-6-10-.04(03), and seeking a determination that theImplementation Procedures were invalid. The trial court entered a summary judgment in favor of ADEM, and, on December 15, 2000, this court affirmed without an opinion. See Legal Envtl.Assistance Found. v. Alabama Dep't of Envtl. Mgmt. (No. 2990902, Dec. 15, 2000), 822 So.2d 490 (Ala.Civ.App. 2000) (table). Our supreme court reversed, holding that the ImplementationProcedures were "rules" under the AAPA and, therefore, that ADEM was required to follow the rulemaking provisions of the AAPA in enacting the Implementation Procedures. Ex parte Legal Envtl.Assistance Found., Inc., 832 So.2d 61 (Ala. 2002).
On May 16, 2002, the trial court, on remand, entered a judgment in which it declared the adoption of the ImplementationProcedures invalid and enjoined ADEM from using those procedures until such time as they were adopted in compliance with the requirements of the AAPA. (Those Implementation Procedures are hereinafter referred to as "the invalid ImplementationProcedures.") In its May 16, 2002, judgment, the trial court also enjoined ADEM from issuing permits for the discharge of pollutants into the State's waters until such time as some implementation procedures were adopted pursuant to the requirements of the AAPA. Also in that judgment, the trial court stated that LEAF could file a motion seeking an award of an attorney fee.
On June 24, 2001, LEAF filed in the trial court a motion seeking an award of an attorney fee; LEAF argued that it was entitled to an attorney fee because, it contended, the litigation it had initiated had conferred a benefit upon the general public. LEAF sought a total attorney-fee award of $111,450. ADEM filed an opposition to LEAF's request for an attorney fee, and LEAF responded to that opposition. On August 20, 2002, ADEM filed a "Supplemental Memorandum in Opposition to [LEAF's] Motion for [an] Award of Attorney Fees," in which it argued that LEAF's claim for an attorney fee was barred by Art. I, § 14, Ala. Const. of 1901, and the doctrine of sovereign immunity. LEAF did not respond to that argument.
On August 29, 2002, the trial court entered a judgment in which it denied LEAF's request for an attorney fee; the trial court did not state the basis for its ruling. On October 9, 2002, LEAF appealed.
The facts detailing the parties' dispute are set forth as follows in our supreme court's opinion in Ex parte LegalEnvironmental Assistance Foundation, Inc., supra:
 "The Federal Antidegradation Policy, 40 C.F.R. § 131.12, requires a state to `develop and adopt a statewide antidegradation policy and identify the methods for implementing such policy.' The Federal Antidegradation Policy specifies that statewide `policy and implementation methods shall, at a minimum, be consistent with the following': (1) protect existing uses of `instream water' and protect the level of water quality necessary to protect the existing uses; (2) maintain and protect `the quality of waters exceed[ing] levels necessary to support propagation of fish, shellfish, *Page 201 
and wildlife' unless a state finds that lower water quality is necessary, but, in any event, the state must assure `water quality adequate to protect existing uses fully'; (3) assure that water quality and uses are not lowered below the existing statutory and regulatory requirements; and (4) maintain and protect high-quality waters where those waters constitute `an outstanding National resource.' 40 C.F.R. § 131.12 (emphasis added [in Ex parte Legal Envtl. Assistance Found.]).
 "ADEM revised its statewide `antidegradation policy,' Ala. Admin. Code (ADEM), Rule 335-6-10-.04, effective April 3, 1991, in response to the mandates of the Federal Antidegradation Policy. However, the amended statewide antidegradation policy adopted by ADEM did not contain any methods or procedures for implementing the policy.
 "In 1995, LEAF complained to the EPA that ADEM had not adopted any methods or procedures to implement the revised antidegradation policy. In April 1997, the EPA regional administrator for Region IV in Atlanta informed ADEM by letter that he was `considering a recommendation' to the EPA administrator in Washington that `a federal promulgation is necessary to bring the statewide antidegradation policy into compliance with the requirements of the Clean Water Act.' He asked ADEM `to take appropriate actions.' The EPA regional administrator informed ADEM that if, within 90 days of its receipt of the letter, ADEM did not submit procedures to implement the statewide antidegradation policy, then he would recommend that the EPA administrator in Washington `prepare and publish proposed federal regulations setting forth a revised statewide antidegradation policy.'
 "Shortly thereafter, ADEM developed and adopted the Implementation Procedures now at issue before us, which allow the maximum pollution allowable under the Federal Antidegradation Policy and which establish the criteria to be met, and the procedures to be followed to demonstrate that those criteria have been met, by applicants for permits to discharge pollutants into Alabama waterways. The Implementation Procedures contain an intermingling of forms and procedures. On August 25, 1999, the EPA regional administrator for Region IV approved the Implementation Procedures.
 "In adopting the Implementation Procedures allowing the pollution and establishing the criteria and procedures for permission to discharge, ADEM did not afford the public notice or opportunity to be heard or otherwise follow the requirements of the AAPA or the [Alabama Environmental Management Act] for the promulgation of `rules.' Therefore, LEAF filed its civil action for declaratory and injunctive relief against ADEM. LEAF sought to enforce the rulemaking provisions of §§ 41-22-4,-5, and -23, and §§ 22-22A-8(a) and (b), Ala. Code 1975."
832 So.2d at 63-64.
In April 2002, ADEM adopted an "emergency" rule allowing the implementation of its antidegradation policy, which allowed it to again issue permits for the discharge of pollutants. Pursuant to the AAPA, that emergency rule was effective for only 120 days, so that the effective period of the emergency rule ended on August 6, 2002. See § 41-22-5(b), Ala. Code 1975 (providing for the emergency rule and specifying that it be effective for 120 days).
Apparently during the period in which it operated under the emergency rule, ADEM proposed the formal adoption of another set of Implementation Procedures *Page 202 
that were substantially the same as the invalid ImplementationProcedures. ADEM provided interested parties and the public the notice required under the AAPA, and it conducted a hearing to receive comments on the proposed adoption of the new proposed set of Implementation Procedures. ADEM adopted, pursuant to the provisions of the AAPA, that set of Implementation Procedures;
those procedures were effective July 31, 2002. See Ala. Admin. Code (ADEM), Rule 335-6-10-.12. (Those procedures are hereinafter referred to as "the newly adopted Implementation Procedures.")
On appeal, LEAF first argues that the trial court erred in entering a judgment denying its claim for an attorney fee because, it contends, the claim for an attorney fee is not barred by Art. 1, § 14, and the doctrine of sovereign immunity. LEAF did not present any argument to the trial court in opposition to ADEM's assertion that LEAF's claim for an attorney fee was barred under those theories.[1] This court may not consider an issue raised for the first time on appeal.[2] Andrews v.Merritt Oil Co., 612 So.2d 409 (Ala. 1992); Smith v. EquifaxServs., Inc., 537 So.2d 463 (Ala. 1988). It is not clear whether the trial court relied on this theory as the basis of its judgment. Given LEAF's failure to properly argue this issue before the trial court, we decline to address it on appeal.
LEAF next argues that the trial court erred in failing to award the attorney fee it requested. LEAF argues that it is entitled to an attorney fee under the "common-benefit" doctrine.
 "Under the American rule, the parties to a lawsuit bear the responsibility of paying their own attorney fees. However, *Page 203 
the law recognizes certain exceptions to this rule, and attorney fees are recoverable when authorized by statute, when provided by contract, or when justified by special equity. Blankenship v. City of Hoover, 590 So.2d 245 (Ala. 1991); Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238 (Ala. 1985). In the latter instance, attorney fees may be awarded where the plaintiff's efforts are successful in creating a fund out of which the fees may be paid, or when the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interests of the plaintiff. City of Ozark v. Trawick, 604 So.2d 360 (Ala. 1992); Brown v. State, 565 So.2d 585 (Ala. 1990); Bell v. Birmingham News Co., 576 So.2d 669 (Ala.Civ.App. 1991). These have been termed the `common fund' and `common benefit' exceptions to the American rule.
 ". . . Whether to award attorney fees is within the sound discretion of the trial court, and the ruling on that question will not be reversed on appeal absent an abuse of discretion. Battle [v. City of Birmingham, 656 So.2d 344 (Ala. 1995)]; Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County, 632 So.2d 442 (Ala. 1993)."
Ex parte Horn, 718 So.2d 694, 702 (Ala. 1998) (emphasis added).
In this case, the trial court did not receive ore tenus evidence on the attorney-fee issue. Instead, it relied on the parties' briefs and the evidence they submitted in support of those briefs. Where a trial court does not receive ore tenus evidence, the ore tenus presumption of correctness does not apply to its factual findings or to its judgment based on those findings. Ex parte Horn, supra. Therefore, this court reviews the evidence de novo. State Bd. of Educ. v. Waldrop,840 So.2d 893 (Ala. 2002); Ex parte Horn, supra. We also note, however, that a court is not compelled to award an attorney fee under the common-benefit doctrine merely because some benefit might be argued to have accrued to the public. State Bd. of Educ. v.Waldrop, supra (the court "may" award fees under the common-benefit doctrine); State Dep't of Revenue v. Calhoun,792 So.2d 373 (Ala.Civ.App. 1998), rev'd on other grounds,792 So.2d 380 (Ala. 1999); Advertiser Co. v. Auburn Univ.,579 So.2d 645 (Ala.Civ.App. 1991).
In arguing that it is entitled to an attorney fee under the common-benefit doctrine, LEAF maintains that its litigation against ADEM benefited the general public in the following ways: (1) ADEM was forced to discontinue its use of the invalidImplementation Procedures; (2) ADEM was temporarily enjoined from issuing permits for new or increased discharges into Alabama's Tier II waters; and (3) ADEM initiated rule-making proceedings and received public comment before enacting the newly adopted Implementation Procedures, which are set forth at Ala. Admin. Code (ADEM), Rule 335-6-10-.12.
In response to LEAF's argument that it was entitled to an attorney fee because, it contended, it had conferred a benefit upon the public, ADEM argued that the temporary cessation of its ability to issue discharge permits had disrupted or damaged some businesses that had sought those permits, and had caused a number of people employed in those businesses to lose their jobs. Also in response to LEAF's argument that it was entitled to an attorney fee, ADEM argued that its financial budget was not sufficient to enable it to pay those attorney fees without cutting necessary public services. ADEM submitted evidence in support of its brief in opposition to LEAF's request for an attorney fee; LEAF filed a motion to *Page 204 
strike much of that evidence. The trial court did not rule on LEAF's motion to strike. LEAF, on appeal, argues that the trial court erred in "denying" its motion to strike much of the evidence ADEM submitted in opposition to LEAF's motion for an award of an attorney fee. In reaching our holding in this opinion, we have not considered the evidence ADEM submitted, and no purpose would be served by a detailed analysis of this issue. Therefore, any error the trial court might have committed in admitting the evidence to which LEAF objected, given the facts of this case, is harmless error. See Rule 45, Ala. R.App. P.
The appellate courts of this state have addressed situations in which trial courts have been asked to award an attorney fee under the common-benefit doctrine. In Brown v. State, 565 So.2d 585
(Ala. 1990), the plaintiffs successfully challenged the State's practice of prosecuting defendants in traffic-related cases based on unsworn or unverified traffic tickets. Our supreme court concluded that the litigation has "clearly resulted in a benefit to the general public" because, the court determined, "[i]t [was] unquestionable that plaintiffs' attorneys rendered a public service by bringing an end to an improper practice." Brown v.State, 565 So.2d at 592. Therefore, the court held that the trial court had improperly denied the plaintiffs' request for an attorney fee based on the common-benefit doctrine.
In Bell v. Birmingham News Co., 576 So.2d 669 (Ala.Civ.App. 1991), the Birmingham News ("the News") filed a complaint seeking to enjoin the members of the Birmingham City Council from conducting elections in closed sessions or by secret ballot. The News prevailed in its litigation, and the trial court granted the News the relief it requested. The trial court also granted the News's request for an award of an attorney fee under the common-benefit doctrine. This court affirmed the award of the attorney fee, holding that there was evidence to support the trial court's determination that the News's litigation conferred a benefit upon the public because it resulted in the cessation of "an improper practice." Bell v. Birmingham News Co., 576 So.2d at 671.
In another case, however, this court affirmed the trial court's determination not to award an attorney fee where the plaintiffs sought a fee under the common-benefit doctrine. In AdvertiserCo. v. Auburn University, 579 So.2d 645 (Ala.Civ.App. 1991), the parties disputed whether a certain report was a "public writing" that was subject to public disclosure under § 36-12-40, Alabama's "Open Records Act." 579 So.2d at 646. The report pertained to the activities of one of the employees of Auburn University who also served as a co-executor of an estate that had made a large contribution to the University. The trial court determined that the report was a public writing, and it ordered that the report be disclosed to the plaintiffs. The plaintiffs then moved for an award of an attorney fee, citing the common-benefit doctrine. The trial court denied the motion for an award of an attorney fee, and the plaintiffs appealed.
This court affirmed, noting that the decision whether to award an attorney fee under the common-benefit doctrine was within the trial court's discretion. Advertiser Co. v. Auburn Univ., supra. The court held that an award of an attorney fee is not compelled under the common-benefit doctrine merely because there might be said to be a benefit to the public. Advertiser Co. v.Auburn Univ., 579 So.2d at 647. The court determined that the trial court could have determined that the benefit the public received from the plaintiffs' action in that case was not "commensurate *Page 205 
with the benefit" that resulted from the litigation in Brown, supra. The court also noted that, given the posture of the case, the trial court could have determined that the defendant University had made a reasonable legal argument in support of the position it took in the litigation, and that that conclusion supported the trial court's refusal to award the plaintiffs' an attorney fee. Advertiser Co. v. Auburn Univ., 579 So.2d at 649.
In State Department of Revenue v. Calhoun, 792 So.2d 373
(Ala.Civ.App. 1998), rev'd in part on other grounds,792 So.2d 380 (Ala. 1999), this court affirmed the trial court's determination that the Department of Revenue had failed to timely respond, pursuant to the Taxpayer's Bill of Rights, to the plaintiff's administrative appeal. The trial court refused to award the plaintiff an attorney fee under the common-benefit doctrine; in his argument on appeal, the plaintiff alleged that the Department of Revenue's actions had constituted "willful negligence." 792 So.2d at 379. In affirming the trial court's determination not to award the plaintiff an attorney fee, this court stated that "[t]rial courts need not award attorney fees inevery instance in which there accrues a `common benefit' to the general public because of the actions of a litigant; rather, they retain the discretion to do so or to refrain from doing so."State Dep't of Revenue, 792 So.2d at 379 (citing AdvertiserCo. v. Auburn Univ., 579 So.2d at 647). This court noted that, although a common benefit might be inferred in the case, the plaintiff had failed to affirmatively demonstrate that common benefit. Id.
Our supreme court affirmed that part of our opinion in StateDepartment of Revenue v. Calhoun that pertained to the claim for an award of an attorney fee under the common-benefit doctrine.Ex parte State Dep't of Revenue, 792 So.2d 380 (Ala. 1999). In so holding, the supreme court noted that the Department of Revenue had presented evidence explaining the delay in its response to the plaintiff's administrative appeal, and that that evidence did not support a conclusion that the Department's delay was attributable to "willful negligence." 792 So.2d at 384.
In a more recent case, our supreme court reversed the trial court's award of an attorney fee under the common-benefit doctrine. State Bd. of Educ. v. Waldrop, supra. In that case, Waldrop successfully established that an enactment that had allowed local school boards to withhold up to five per cent of a teacher's salary conflicted with a provision requiring that all teachers be paid the minimum salary schedule for their experience and length of service. Waldrop then moved for an award of an attorney fee, arguing that his litigation had conferred a common benefit on the public. The trial court awarded Waldrop $287,500 as an attorney fee.[3] Our supreme court reversed, concluding that Waldrop had failed to show that, under the facts of that case, he had conferred a benefit on the general public. The court then went on to add:
 "Finally, even if we attributed some tangential benefit to the Board as a result of the [litigation], the Board would be required to pay Waldrop's attorney fees with funds from its annual budget. That money is allocated to the Board for the purpose of educating children enrolled in Alabama's public schools. Thus, any award of attorney fees against the Board reduces the funds available for that purpose. We cannot *Page 206 
conclude that Waldrop's litigation benefited all children enrolled in Alabama's public schools to the level required to justify an attorney-fee award under the common-benefit exception [to the American rule]."
State Bd. of Educ. v. Waldrop, 840 So.2d at 901-02 (emphasis added).
In this case, we conclude that the trial court did not err in denying LEAF's request for an attorney fee. The record, even omitting for the sake of argument the evidence ADEM submitted and to which LEAF objected, supports a determination that LEAF was not entitled to an award of fees. One way in which LEAF maintains that its litigation benefited the general public was that ADEM was forced to refrain from using the invalid ImplementationProcedures and that ADEM was enjoined, for a period of several months, from issuing permits for new or increased discharges of pollutants into the State's Tier II waters. That period ended when ADEM adopted the emergency rule that was effective during the time it proposed and heard comments on the newly adoptedImplementation Procedures. LEAF acknowledges that the cessation of ADEM's authority to issue permits was temporary. Further, LEAF asserts only cursorily that, because of the temporary cessation of ADEM's authority to issue permits, the public was benefited. LEAF does not argue, and did not present any evidence indicating, that the temporary cessation resulted in any lasting benefit to the public or that ADEM, ultimately issued fewer discharge permits.
LEAF also argues that the public benefited from the requirement that ADEM use rule-making procedures and allow public comment before adopting the current Implementation Procedures. In making that argument, however, LEAF does not maintain that the newly adopted Implementation Procedures are different from the invalid Implementation Procedures.[4] In fact, the newly adopted Implementation Procedures, which ADEM properly adopted pursuant to the provisions of the AAPA, are substantially similar to the invalid Implementation Procedures.
LEAF also maintains that, in initiating the litigation that resulted in the enactment of the newly adopted ImplementationProcedures, it ended "unlawful conduct" on the part of ADEM. In response, ADEM contends that the record does not demonstrate that, when it improperly adopted the invalid ImplementationProcedures, it acted in bad faith.
In Advertiser Co. v. Auburn University, supra, this court distinguished the facts of that case from those of Brown v.State, supra, and Bell v. Birmingham News Co., supra, on that same basis. The court noted that in Brown v. State, the State had "committed a clear violation of the law in question," and that in Bell v. Birmingham News Co., "the city's actions [were] an attempt to evade the provisions of a state law." AdvertiserCo. v. Auburn Univ., 579 So.2d at 649. The court noted that the trial court had found that there was arguable *Page 207 
merit in the University's refusal to disclose the report at issue, and concluded that "unlike the situations in Brown andBell, there was no absence of justiciable issues." Id.
Similarly, in this case, we conclude that ADEM's position that the invalid Implementation Procedures were not "rules" subject to the rule-making provisions of the AAPA was, at the very least, legitimately arguable. Although our supreme court ultimately found ADEM's interpretation to be incorrect, the determination of whether the implementation procedures constituted "rules" under the AAPA was a justiciable issue. See Advertiser Co. v. AuburnUniv., supra.
We also note that an award of attorney fees to LEAF from ADEM's general budget would reduce ADEM's ability to regulate such matters as the discharge of pollutants into Tier II waters. SeeState Bd. of Educ. v. Waldrop, supra. Given the facts and history of this case, we cannot say that LEAF's litigation resulted in a benefit to the public that would "justify an attorney-fee award under the common-benefit exception." Id. at 901.
We cannot say that LEAF has demonstrated that its litigation against ADEM was of such a benefit to the public as to justify an award of an attorney fee under the common-benefit doctrine. Therefore, we affirm the trial court's judgment.
OPINION OF MARCH 21, 2003, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
YATES, P.J., and CRAWLEY, PITTMAN, and MURDOCK, JJ., concur.
[1] We recognize that the trial court entered its judgment nine days after ADEM filed its "supplemental" opposition to LEAF's claim for an attorney fee. LEAF did not respond to that "supplemental" opposition brief; it did not move for additional time to address that issue; and it did not file a postjudgment motion in the trial court pertaining to the issue of sovereign immunity. On appeal, LEAF has not contended that it did not have adequate time before the trial court entered its judgment in which to address that issue.
[2] In its brief on application for rehearing, LEAF contends that it chose not to address the sovereign-immunity issue before the trial court because there was "no additional controlling authority" on that issue other than the cases it had already cited in support of its contention that it should be awarded an attorney fee under the "common-benefit" doctrine. In the trial court, LEAF had cited the following cases for the proposition that an attorney-fee award was appropriate under the "common-benefit" doctrine: Ex parte Horn, 718 So.2d 694 (Ala. 1998); Brown v. State, 565 So.2d 585 (Ala. 1990); Bell v.Birmingham News Co., 576 So.2d 669 (Ala.Civ.App. 1991). LEAF also maintains in its brief on application for rehearing that "it would have served no useful purpose" for it to respond to ADEM's sovereign-immunity argument by reiterating before the trial court those same arguments.
In its brief on appeal, however, LEAF addressed and argued the issue of sovereign immunity; it cited caselaw in support of its sovereign-immunity argument that it had failed to bring to the attention of the trial court. The authority LEAF cited for the first time on appeal included: State Bd. of Educ. v. Waldrop,840 So.2d 893 (Ala. 2002); Slawson v. Alabama Forestry Comm'n,631 So.2d 953 (Ala. 1994); State Dep't of Human Res. v. Kelly,623 So.2d 738 (Ala.Civ.App. 1993); and Justice Maddox's dissent in State v. Brown, 577 So.2d 1256, 1260 (Ala. 1996). We have again compared the arguments LEAF made before the trial court with those it asserted in its brief submitted to this court on original submission. We cannot agree with the assertion contained in LEAF's brief on application for rehearing that, in concluding LEAF had raised an argument pertaining to the applicability of sovereign immunity for the first time on appeal, this court "overlooked" any argument on that issue that LEAF might have made before the trial court.
[3] The trial court determined the appropriate attorney fee to be $115,000, and it then applied a multiplier of 2.5 to that award.
[4] On application for rehearing, LEAF accuses this court of "overlooking" certain changes that it maintains, for the first time on application for rehearing, were made in the newly adoptedImplementation Procedures. As stated in this opinion, LEAF referenced none of those changes in its brief to this court on original submission, and it made no argument that any of the changes in the newly adopted Implementation Procedures
supported its contention that it had conferred a benefit upon the public. It is not the duty or function of this court to search for evidence to support the contentions made in an appellant's brief. See Rule 28(a)(10), Ala. R.App. P.; Ex parte Riley,464 So.2d 92 (Ala. 1985); Brown v. Brown, 719 So.2d 228
(Ala.Civ.App. 1998).