# The State *ex rel.* Smith, Treasurer, &c., *v.* White, Auditor.

## *Application for Mandamus.*

1. *Agricultural school and experiment station; appropriation of State funds.*—Where an act of the legislature appropriates a certain portion of the revenue derived from the sale of fertilizer tags to the support of the agricultural schools and experiment stations then in operation, and such others as may thereafter be created, and under another act passed at the same session of the legislature providing for the establishment of additional schools and experiment stations, an additional agricultural school and experiment station is established more than two years after the passage of said act, such school is not entitled to any of the funds derived from the sale of fertilizer tags before its establishment; the appropriation by the acts of the legislature being intended to aid such schools and experiment stations as are in

operation at the time of the receipt of the fund from fertilizer tags, and also to those that are subsequently established, from the funds derived from such source after their establishment.

2. *Same; mandamus; petition in the name of the State.*—Where, by act of the legislature appropriating money to the use of agricultural schools and experiment stations, the money is made payable to the treasurer of the Board of Control of such institutions, such officer is authorized to use the name of the State in applying for a writ of *mandamus*, to compel the payment of such appropriation.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The proceedings in this case were had upon a petition asking for a writ of *mandamus*, which was exhibited by the State of Alabama, on the relation of Edward J. Smith, as Treasurer of the Board of Control of the Agricultural School and Experiment Station of the Fourth Congressional District of the State of Alabama, and was filed on August 12, 1897. It was averred in the petition that by the act of the General Assembly of Alabama, approved February 18, 1895, entitled "An act to establish five additional branch agricultural experiment stations and agricultural schools, to be located in the first, fourth, fifth, sixth and ninth Congressional Districts, respectively, in the State of Alabama," (Acts of 1894-95, p. 581), the Agricultural School and Experiment Station for the Fourth Congressional District of the State of Alabama was created and established; that on July 5th, 1897, the citizens of the Fourth Congressional District donated and caused to be conveyed to the State for the use of said station and school, real estate and buildings of a value greatly in excess of $5,000, which was duly approved by the Commissioner of Agriculture; that said school and experiment station was located by the Governor, Commissioner of Agriculture and the Superintendent of Education of the State at Sylacauga, in the Fourth Congressional District; that prior to July 16, 1897, there was appointed by the Governor the following Board of Control: R. B. Kelly, J. M. Thornton, E. J. Smith, J. L. Walthall and J. F. Morgan; that on July 16, 1897, the said Board of Control was regularly organized by the election of R. B. Kelly as its president, J. F. Morgan as its secretary, and the relator, E. J. Smith as its treasurer; that said E. J. Smith entered upon the

discharge of the duties of the office, and files the present petition by the authority and direction of said Board of Control. The petition then averred that by the act of the General Assembly, approved February 4, 1895, it was provided that the revenue or income derived from the sale of tags for fertilizer, sold by the Commissioner of Agriculture after the passage of said act "over and above the sum of 25 cents per ton, shall be appropriated and applied in equal parts to the support of the four agricultural schools and experiment stations located at Athens, Albertsville, Abbeville, and Evergreen, and any other branch agricultural experiment stations and experiment schools created thereafter by the legislature of the State." It is then averred in the petition that since the creation and establishment of the five additional experiment stations and schools, under the provisions of the act of February 18, 1895, there has been derived and collected by the Commissioner of Agriculture from the sale of fertilizer tags, over and above the sum of 25 cents per ton, the sum of $56,647.35, which sum has been collected and paid into the treasury of the State; that of this sum the experiment station and school of the Fourth Congressional District is entitled to one-ninth thereof, to-wit, $6,294.15; that in strict accordance with his duties, the petitioner, E. D. Smith, as such treasurer and by the direction of the Board of Control, did, on July 30, 1897, demand of the Auditor of the State, that he draw his warrant on the Treasurer of said State for said sum of $6,294.15, in favor of said Smith, as such treasurer, for the use of the school and experiment station of the Fourth Congressional District, as its *pro rata* share of the money appropriated by the General Assembly; that the Auditor refused to draw such warrant or any warrant in favor of the school; that by reason of the refusal of the Auditor to draw said warrant, the school is prevented from obtaining the money appropriated to its support by the General Assembly of the State.

There then follows the prayer for the issuance of the writ of *mandamus*, addressed to the Auditor, commanding him to draw his warrant on the State treasurer, in favor of E. J. Smith, as treasurer, and the Board of Control of the Fourth Congressional District Agricul-

[The State *ex rel.* Smith, Treasurer, &c., v. White, Auditor.]

tural School and Experiment Station for the sum of $6,294.15.

To this petition, the Auditor, as defendant, demurred, upon the following, among other grounds : 1st. That the State of Alabama is not a proper party to the petition. 2d. Edward J. Smith, as treasurer of said Agricultural School and Experiment Station was not a proper party to said petition. 3d. That said petition fails to show any legal right in petitioner to the warrant, which it seeks to compel the Auditor to issue. 4th. That it was not shown that the petitioner has authority to use the name of the State of Alabama in such petition. 5th. It appears from the petition that if the petitioner is entitled to a warrant for any sum, that it is not entitled thereto until October 1, 1897, and then to only one-fourth of its proportionate share of said fund. 6th. That the said petition is insufficient in law, and does not present a case for *mandamus* under the statute therein referred to, or under the law. 7th. It appears from said petition that said school and station was not established until July 5, 1897, and that said fund accrued and was placed in the treasury before said school and station was established.

Upon the submission of the cause upon the demurrers filed to the petition, the court sustained the demurrers. From this judgment the petitioner appeals, and assigns the rendition thereof as error.

R. B. KELLY, W. J. GADDIS and GORDON MACDONALD, for appellant.—By the authority of the several acts of the legislature under which the agricultural schools and experiment stations instituted in this State were established, the petitioner is entitled to the writ of *mandamus*. Acts of 1894–95, pp. 368–9; Acts of 1894–95, p. 581; Acts of 1896–97, p. 274.

W. S. THORINGTON and W. W. PEARSON, *contra.*— There is no express statute or rule in this State requiring or authorizing a petition for mandamus in the interests of private individuals or corporations to be filed in the name of the State, but the policy of the law manifested in statutes applicable to other actions is, that such suits shall be brought in the name of the party really interested in the controversy, and this is a grow-

ing tendency, as indicated by the above citations. *Mandamus* as recognized by all the authorities in an extraordinary legal remedy granted only when a clear specific legal right is shown, and when for its enforcement there is no other adequate remedy.—3 Brick. Dig. 625. The absence of a clear specific, legal right is always fatal to the granting of the writ.—*Ex parte Huckabee*, 71 Ala. 427; *Leigh v. State*, 69 Ala. 261. The petition in this cause ought to have been filed in the name of said board and not in the name of the State on the relation of Smith, the treasurer. The latter is given no such power as such treasurer by the statute creating said school.—Acts of 1894–95, p. 582. The State of Alabama is not a proper party in this action.—14 Amer. & Eng. Encyc. of Law, 217; 1 Dillon's Municipal Corporations, (4th ed.), § 22.

2. There was no right in the petitioner to claim anything from the fund until October 1st, 1897, and then it could only draw its proportionate share thereof for the quarter ending on that day. The demand upon the Auditor shown in the petition, having been for an entirely different sum, and the petition having been filed before the 1st of October, 1897, it is entirely insufficient to support a *mandamus* to the Auditor for any amount. If the court will examine the statutes relating to the fund in question and the schools of the class mentioned in the petition, it can not fail to observe that there are other schools besides petitioner whose interests are involved in the question raised by the petition for *mandamus*, and that to grant said writ would materially affect their rights whilst they are not parties and have no opportunity to be heard. It has been the practice in all such cases to deny the writ.—*Ex parte Dubose*, 54 Ala. 278; Code of 1886, §§ 148, 150, 151; Acts of 1888–89, p. 119; Act, February 16th, 1887, see Code, p. 89, note; Acts of 1888–89, p. 52; Acts of 1888–89, p. 1036; Acts of 1892–93, pp. 526, 695, 749; Acts of 1894–95, pp. 368, 581.

COLEMAN, J.—Edward J. Smith, as treasurer of the board of control of the agricultural school and experiment station of the Fourth Congressional District, petitioned the court for the writ of *mandamus*, to compel the Auditor to draw his warrant in favor of petitioner upon

the Treasurer of the State for a designated amount of money. The facts upon which the claim is based are stated in the petition. The court sustained a demurrer to the petition, from which judgment the appeal is prosecuted. The money claimed arose from the sale of tags, required by law to be attached to bags, barrels or packages of fertilizer sold or exchanged under the following statute, to-wit : "And the revenue or income derived by the sale of such tags, over and above the sum of twenty-five cents per ton, shall be appropriated and applied in equal parts to the support of the four agricultural schools and experiment stations located at Athens, Albertville, Abbeville and Evergreen, and any other branch agricultural experiment station and agricultural school created hereafter by the legislature of this State." Acts, 1894–95, p. 368. This act was approved February 4th, 1895. At the same session of the legislature, on the 18th of February, 1895, provision was made for five additional branch agricultural experiment stations and agricultural schools.—Acts, 1894–95, pp. 582-83. We quote the 1st, 5th and 9th sections of said act :

"Section 1. *Be it enacted by the General Assembly of Alabama*, that five additional agricultural branch experiment stations and agricultural schools are hereby established to be located in the first, fourth, fifth, sixth and ninth congressional districts, respectively, in the State of Alabama."

" Sec. 5. *Be it further enacted*, that for the equipment and improvement of said stations and schools there is hereby appropriated out of the agricultural fund in the treasury, not otherwise appropriated, an equal amount to the sum appropriated to each of the other agricultural schools and experiment stations in Alabama. *Provided*, there is so much in said fund not otherwise appropriated, one-fourth of such sum to be paid quarterly, to-wit, January 1st, April 1st, July 1st, and October 1st, of each year to the treasurer of said board of control of said stations."

" Sec. 9. *Be it further enacted*, that no school and experiment station shall be established in either of said congressional districts until such district or the citizens thereof shall donate and convey to the State, for the use of such stations and schools, real estate or buildings, not less than five thousand dollars in value as approved by

the Commissioner of Agriculture. *Provided,* that when the school is established in the sixth district, it shall be established under this bill, at Hamilton, Marion county, and that for the fifth district at Hayneville, Lowndes county. *Provided further,* and when located, the Hamilton people shall make title to the State for the school building and eighty acres of land adjoining.''

The petition shows on its face that the agricultural school in the Fourth Congressional District was not established and located until the 5th of July, 1897, and that the money paid over to the treasurer derived from the sale of tags, was received during the years 1895, 1896, and the first quarter of the year 1897, ending with the month of March. The meritorious question raised by the demurrer is, whether an agricultural school and experiment station established and located under the provisions of the statute in July, 1897, is entitled to an equal share of the money received during the previous years.

There was no compulsion upon the citizens of either of the congressional districts named in section 1, *supra,* to comply with the terms and conditions upon which a school and experiment station should be established in said congressional districts, respectively. It appears from the petition of the relator that some if not all of the privileged congressional districts, availed themselves of the benefit of the provisions of the act, while the citizens of the fourth delayed until July 5th, 1897. Suppose this district had delayed ten or twenty years, and then complied with the terms of the act. Could it be reasonably contended, that it would then be entitled to receive an equal amount of money with the stations and schools which had been operated and bestowing during these years the public benefits intended by the statute? Section 5 directs that the money shall be paid quarterly, thus clearly showing that the appropriations were in contemplation of established schools and experiment stations.

We find no reference in the petition, nor in the brief of counsel for appellant, to the act of the legislature approved January 30th, 1897.—Acts, 1896-97, p. 465. By the first section of the statute twenty-five hundred dollars is appropriated to each of said schools and experiment stations, to be paid quarterly; and by section 10 of

said act, it is provided that none of said schools shall receive the appropriation, "unless such school shall be actually conducting an agricultural experiment station and agricultural school," etc. We feel confident in our conclusion that the intention of the Legislature was to aid schools and stations, established and being conducted according to its provisions.

It appears also that by the act of February 16th, 1887, (Acts of 1886-87, p. 828), and the act of February 28th, 1889 (Acts of 1888-89, p. 119, also p. 729), that the proceeds derived from sale of fertilizer tags are subject to other demands, than those mentioned in the petition of the relator. These are public statutes of which. the courts take judicial notice. The petition does not give the court facts which will enable it to say the precise amount, if any, that relator is entitled to receive.

The demurrer raises the objection also that the relator has not shown a case in which he is authorized to use the name of the State. *Mandamus* being a civil remedy, parties in interest are the only proper parties, when such interest pertains only to private rights. By statute the money is made payable to the treasurer of the board. The appropriation is by the legislature and for the public good. We are of opinion this objection is not well taken.

For the other reasons stated, the demurrer to the petition was properly sustained.

Affirmed.

*Application for Mandamus.*

