[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1072 
The City of Pelham ("the City") challenges the distribution of net profits from the Alabama Alcoholic Beverage Control Board ("the ABC Board"). The City alleges that it has been deprived of earmarked funds in violation of the formula provided in § 28-3-74, Ala. Code 1975. The named defendants are the ABC Board, the State of Alabama, Don Siegelman in his official capacity as then Governor,[1] and Robert Childree in his official capacity as state comptroller (hereinafter referred to collectively as the "State defendants"). The trial court held that the ABC Board had violated § 28-3-74, yet denied the City monetary relief based upon the State defendants' State immunity. The trial court awarded the City attorney fees. Both parties appeal. We affirm the judgment insofar as it denies monetary relief and we reverse it insofar as it awards attorney fees. *Page 1073 
 I. Factual and Procedural History
The City, an incorporated municipality located in a "wet" county,[2]
is a designated beneficiary of revenues collected by the ABC Board pursuant to § 28-3-74. Section 28-3-74 requires the ABC Board to distribute "net profits" received from sales by Alabama liquor stores in each fiscal year of up to and including $2,000,000 to designated beneficiaries under the following allocation formula:
 "(1) Fifty percent shall be covered into the General Fund of the Treasury of the state;
 "(2) Nineteen percent shall be covered into the Treasury of the state to the credit of the State Department of Human Resources to be used, and the same is hereby appropriated exclusively, for old age assistance and for other purposes of the State Department of Human Resources;
 "(3) Ten percent shall be covered into the Treasury of the state to the credit of the wet counties of the state and shall be divided equally among each of said counties and shall be paid to them and shall be covered by them into their respective general funds;
 "(4) One percent shall be paid into the Treasury of the state to the credit of the wet counties of the state and shall be divided equally among each of said counties and shall be paid to them to be used by them exclusively for the purposes of public health; and
 "(5) Twenty percent shall be covered into the Treasury of the state and shall be paid to the incorporated municipalities in which Alabama liquor stores are located on the following basis: Each municipality in which an Alabama liquor store is located shall receive as its percentage or portion of said 20 percent an amount equal to the ratio of the profits earned by such municipality's Alabama liquor store or stores to the total net profits of all Alabama liquor stores."
§ 28-3-74(a), Ala. Code 1975.
The net profits exceeding the sum of $2,000,000, by up to and including $200,000, are apportioned among and paid to the cities and towns in wet counties on the basis the ratio of the population of each such city or town bears to the total population of all such cities and towns. Any remainder of such excess over $200,000 is apportioned as follows:
 "(1) Ten percent of such remainder for each fiscal year thereafter shall be apportioned among and paid to the wet counties in the state for general purposes on the basis of the ratio of the population of each such county of the population of all such counties;
 "(2) Sixteen and two-thirds percent of such remainder for each fiscal year thereafter shall be apportioned among and paid to the aforesaid incorporated cities and towns in the wet counties in the state on the basis of the ratio of the population of each such city or town to the total population of such cities and towns;
 "(3) Three and one-third percent of such remainder for each fiscal year thereafter shall be apportioned among and paid to such of said several cities and towns as may have one or more Alabama liquor stores therein upon the basis of the ratio of the population of each such liquor store city or town to the total population of all such liquor store cities and towns. Each and every amount received by any city or town out *Page 1074 
of said remainder shall be for general purposes;
 "(4) Ten percent of such remainder shall be covered into the Treasury of the state to the credit of the State Department of Human Resources to be used for general welfare purposes; and
 "(5) Sixty percent of such remainder for each fiscal year thereafter shall be paid to the state for general purposes."
§ 28-3-74(b), Ala. Code 1975.
The Legislature, in its annual appropriation acts, directs that specific amounts be transferred from the ABC Board's operating funds to the State general fund and various other agencies. Those diversions reduce or eliminate net profits and thus affect the sums distributable pursuant to the formulas in § 28-3-74.
On March 10, 2000, the City filed a complaint seeking a declaratory judgment against the ABC Board and Don Siegelman, in his official capacity as then Governor of the State. The City argued that despite the unambiguous language of § 28-3-74, the defendants consistently[3]
refused to distribute net profits of the ABC Board pursuant to the statute and instead made special allocations on an "arbitrary or random basis." The complaint also sought a certification of a class of other designated beneficiaries under § 28-3-74, injunctive relief, and retroactive damages based on the allegedly improperly diverted revenues. The City subsequently named as additional defendants the State of Alabama and Robert Childree, in his official capacity as state comptroller.
The State defendants filed a motion to strike the class certification on the ground that the City had not requested a class certification hearing as soon as practicable, as required under § 6-5-641, Ala. Code 1975. The State defendants also argued that the City's claim for monetary relief was barred by State immunity. The trial court never ruled on the motion to strike, and the City took no further steps toward class certification.
The City filed a motion for a summary judgment on February 21, 2001, seeking to have the distributions of revenue to the State general fund in contravention of § 28-3-74 declared illegal and to have the diverted funds restored to the designated beneficiaries. The City argued that since 1988 the Legislature, through the aforementioned annual appropriation acts, had mandated transfers totaling $76,000,000 of what the City considered to be earmarked funds, in violation of § 28-3-74
and § 213, Alabama Constitution of 1901. Section 213 prohibits the creation of debt except for limited purposes.
In its motion, the City relied upon the testimony of James Harry, an accountant with the ABC Board, who testified that the Legislature had mandated what he referred to as "special appropriations" to various State agencies. The City contended that the ABC Board had expressed concerns about the special appropriations, quoting Harry's testimony as follows:
 "Q. Do you recall anyone ever expressing any concerns about the appropriations from the [L]egislature?
 "A. We expressed concerns about the fact that it kept growing and would it put us into the red, so to speak. That's all I was ever concerned about, was would we not have profitability. In *Page 1075 
other words, every year we zero out all of our moneys. Whatever we don't spend, we zero it out. And we didn't want to be caught at the end of the year in the red, overspending. And the special appropriations is a part of our spending plan.
 "Q. When you say spending plan, the ABC Board, to your knowledge, has no control over those special appropriations do they?
 "A. No, not that I know of. Just the [L]egislature tells us we will send them that amount of money."
The City also attached a "Schedule of Total Net Revenues and Distributions of ABC Board Net Revenues" from 1988 to 1998 and a copy of the ABC Board's 1997-1998 annual report to show that net profits were reduced each year by the "special appropriations" by the Legislature.
On September 14, 2001, while this action was pending, Act No.2001-891, Ala. Acts 2001 ("the 2001 Act"), became effective. The 2001 Act purportedly operated retrospectively to cure the alleged improper distributions by validating and confirming the distributions for the fiscal years 1990 through 2002 and prospectively changed the allocation of revenues in excess of $2,200,000 for each fiscal year beginning October 1, 2002. The 2001 Act contained the following four sections:
 "Section 2. The transfers from the operating funds of the [ABC Board] to the State General Fund and state agencies in the State General Fund budget acts for the fiscal years 1989-90 through 2001-2002 shall be in lieu of the distribution required by Section 28-3-74 for each of those fiscal years. Beginning with the State General Fund budget act for fiscal year 2002-03, no transfers shall be made from the operating funds of the ABC Board to the State General Fund or other state agencies.
 "Section 3. In the event the Alabama ABC Board or the Governor of the State of Alabama, the State Comptroller or any other state official or officer is required to pay any judgment or attorney's fees in any lawsuit challenging the funding mechanisms under this section, or in the event the Alabama ABC Board or the Governor of the State of Alabama, the State Comptroller or any other state official or officer is required to pay any judgment or attorney fees in the lawsuit styled The City of Pelham, Alabama v. The Alabama Alcoholic Beverage Control Board, et. [sic] al., case no: CV-2000 750-PR, the [ABC Board] or the Governor of the State of Alabama, the State Comptroller or any other state official or officer shall be reimbursed for such judgment and fees out of payments from Section 28-3-74(a)(3) and Section 28-3-74(a)(5) before any amount is distributed to any wet city or county.
 "Section 4. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, that declaration shall not affect the part which remains.
 "Section 5. It is the intent of the Legislature that this act be construed as retroactive and curative. All transfers or distributions of net profits from state liquor stores to the state general fund authorized in general appropriation acts from October 1, 1989, until the effective date of this act shall be deemed as having been transferred or distributed under the authority of this act."
(Emphasis added.)
On November 6, 2001, the State defendants filed a motion for a summary judgment. The State defendants acknowledged that the Legislature, in its annual appropriation acts, directed that specific amounts be transferred from the ABC Board's operating funds to the State *Page 1076 
general fund and to various other agencies. The State defendants did not concede that the distributions made pursuant to the appropriation acts were invalid; however, they claimed that the 2001 Act cured any alleged improper distributions. The State defendants argued that retroactive legislation is presumptively valid unless it impairs a vested right and that the City had no vested right in an appropriation.
The State defendants had responded earlier to the City's motion for a summary judgment with the affidavit of Randall C. Smith, the administrator for the ABC Board. Smith stated that the ABC Board had transferred from its operating funds the sums designated to be paid by the Legislature, with the exception of one year when the ABC Board revenues were insufficient to transfer any funds. Smith further stated that "[a]fter meeting the [ABC] Board's operating expenses[,] including payment of the clearly directed transfer and distributing taxes, the [ABC] Board then distributes the remaining funds as the net profits referred to in Alabama Code [1975,] § 28-3-74." In direct conflict with the City's claims, Smith stated that "[t]he [ABC] Board ha[d] not acted in an `arbitrary or random' basis nor ha[d] the [ABC] Board `disbursed monies in direct contravention to Alabama law.'"
On February 22, 2002, the trial court entered a summary judgment in favor of the City and held that the City had presented substantial evidence indicating that it had been deprived of statutorily earmarked funds by the improper distribution of revenue in violation of §28-3-74. However, the trial court held that the City was not entitled to monetary relief because its claims were barred by the State defendants' State immunity. The trial court took judicial notice of the 2001 Act and found that the Legislature, by referring to the present action in § 3 of the 2001 Act, had recognized that the City's claims had substantial merit. Finally, the trial court awarded the City attorney fees in the amount of $185,000 under a common-benefit or common-fund theory.
On March 22, 2002, the State defendants filed a motion to alter, amend, or vacate the trial court's order. Specifically, the State defendants requested a declaration of the validity of the 2001 Act and requested a clarification of the trial court's basis for its award of attorney fees. The motion was denied, and both parties appeal.
The State defendants argue that the trial court should have declared the 2001 Act valid and confirmed the prior distributions and that the trial court erred in awarding the City attorney fees. The City cross-appeals, arguing that the doctrine of State immunity does not bar an award of monetary damages and that the attorney fees awarded were inadequate.
 II. Standard of Review
A motion for a summary judgment is granted when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Ala.R.Civ.P. To withstand a properly supported motion for a summary judgment, the nonmoving party must present "substantial evidence" of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). We review the summary judgment de novo in the light most favorable to the nonmoving party and apply "the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. *Page 1077 John Deere Co., 531 So.2d 860, 862 (Ala. 1988).
 III. Analysis
The briefs of both parties focus upon the three issues decided by the trial court, including (1) whether the 2001 Act was an unconstitutional attempt to retroactively validate the distributions the ABC Board made in prior years, (2) whether the State defendants are immune, and (3) whether the award of attorney fees to the City under a common-fund or common-benefit theory was contrary to the doctrine of State immunity and, if not, whether those fees were reasonable.
 A. Constitutionality of the 2001 Act
In its brief to this Court, the City argues that the State defendants "concocted and passed a blatantly unconstitutional act, attempting to absolve themselves of liability for violating Alabama law." The City argues that a vested right existed in what they describe as earmarked funds so long as the statutory mandate of § 28-3-74 remained in place and to the extent the funds were available for distribution. According to the City, the 2001 Act did not simply make procedural changes — it altered and affected the City's vested rights. The City argues that the 2001 Act violates §§ 95 and 213 of the Alabama Constitution of 1901.
The City cites Childree v. Hubbert, 524 So.2d 336 (Ala. 1988), for the proposition that the Legislature has no authority to "unearmark" revenue sources by appropriating those revenues in a manner contrary to the "earmarking." Alternatively, the City argues that the 2001 Act appears to prohibit only future actions because it includes a "savings clause" with respect to the instant action.
The State defendants argue that the 2001 Act validly changed the earmarking formula of § 28-3-74; that it prohibited future transfers from the ABC Board's operating funds to the general fund; and that it validated the distributions made in the prior years referenced in the 2001 Act. Therefore, according to the State defendants, the City's argument that the distributions in prior years were invalid is moot because any arguable defects in the distributions were cured by the 2001 Act. The State defendants argue that the alleged defects were the result of the Legislature's failure to follow the proper procedure in the prior years. They contend that the Legislature had the power to divert the funds and that it could have accomplished this diversion by amending § 28-3-74 to permanently change or eliminate the earmarking formula or by altering the distribution for a single year by an appropriation act that complied with the formalities of §§ 45 and 71 of the State constitution. We agree.
We first address the principles that guide us in determining the validity and constitutionality of the 2001 Act. In Alabama StateFederation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 814-15
(1944), this Court discussed the principles of statutory construction:
 "Uniformly, the courts recognize that [the power to invalidate a legislative act] is a delicate one, and to be used with great caution. It should be borne in mind, also, that legislative power is not derived either from the state or federal constitutions. These instruments are only limitations upon the power. Apart from limitations imposed by these fundamental charters of government, the power of the legislature has no bounds and is as plenary as that of the British Parliament. It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and *Page 1078 intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487
[(1939)], 121 A.L.R. 283."
(Emphasis added.) Because we must presume that the 2001 Act is valid, the burden rests upon the City to prove its invalidity beyond a reasonable doubt. Weaver v. Palmer Bros., 270 U.S. 402, 410 (1926).
In pertinent language, the 2001 Act provides that the transfers from the operating funds of the ABC Board between the fiscal years 1989-1990 through 2001-2002 "shall be in lieu of the distribution required by Section 28-3-74 for each of those fiscal years." The 2001 Act also reduces the percentages of net profits allocated to various beneficiaries, including the percentage allocated to the City. According to the State defendants, the 2001 Act eliminated the annual lump-sum distributions to the State general fund. The 2001 Act offsets this elimination of annual distributions by increasing the percentage of net profits allocated to the State general fund.
The alleged improper distributions the 2001 Act purportedly cured were made pursuant to annual appropriation acts. The State defendants included in their reply brief to this Court three appropriation acts for the fiscal years 1998 through 2000. See Act No. 98-496, Ala. Acts 1998; Act No. 99-434, Ala. Acts 1999; and Act No. 2000-408, Ala. Acts 2000. Those appropriation acts carved out a sum certain from the "operating funds" of the ABC Board for payment to the State general fund with the proviso that the transfer "shall not affect any distribution of revenue generated from the sale of alcoholic beverages." We take judicial notice that the general appropriation acts beginning in the year 1988 all include the same proviso. See Act No. 88-953, Ala. Acts 1988; Act No. 89-350, Ala. Acts 1989; Act No. 90-764, Ala. Acts 1990; Act No. 91-738, Ala. Acts 1991; Act No. 92-621, Ala. Acts 1992; Act No. 93-771, Ala. Acts 1993; Act No. 94-486, Ala. Acts 1994; Act No. 95-740, Ala. Acts 1995; Act No. 96-819, Ala. Acts 1996; Act No. 97-933, Ala. Acts 1997.[4] See alsoFolsom v. Wynn, 631 So.2d 890, 902 (Ala. 1993) (judicial notice taken of legislative acts that provided additional appropriations to the judicial branch); State v. White, 116 Ala. 202, 209, 23 So. 31, 33 (1898) (judicial notice taken of a legislative act that directed appropriations in contemplation of established schools and experiment stations).
For each year contested in the present action, the general appropriation act allocated the remaining net profits, after the payment of the stated sums, to be distributed under the allocated percentages of § 28-3-74. It is undisputed that the appropriation acts "deprived" the City of part of the net profits it received in the contested years by carving out sums for other purposes from the operating funds of the ABC Board. A reduction of the operating funds obviously resulted in a reduction of net profits available to the City. *Page 1079 
For example, the City presented the ABC Board's 1997-1998 annual report, which stated that "[p]rofits are reduced by $7,001,121.00 [in] specific appropriation transfers which were to be made from operating funds." While the State defendants contest the City's amount of $76,000,000, as the alleged total transfer diversion, the amount of net profits received by the City was reduced by the annual appropriation acts.
Both the City and the State defendants recognize that an act that is expressly retroactive will be given retroactive effect unless it impairs vested rights. See Ex parte Bonner, 676 So.2d 925 (Ala. 1995); Courtnerv. Etheredge, 149 Ala. 78, 43 So. 368 (1907). The 2001 Act expressly provides for retroactive application, stating in § 5 that "[i]t is the intent of the Legislature that this act be construed as retroactive and curative." Thus, unless the City establishes that it had a vested right to a percentage of the net profits of the ABC Board, we must uphold the curative effect of the 2001 Act.
The City contends in its brief that it had a vested right to a percentage of the net profits collected by the ABC Board because, it argues, the net profits "were to be administered, handled[,] and distributed in accordance to [the] well-defined priority system" of § 28-3-74. At oral argument, the City referred to the express language of § 28-3-74, noting that the statute provides that the net profits "shall" be paid according to the percentages allocated therein. The City, however, fails to cite authority for the proposition that it had a vested right in a percentage of the net profits; instead, it supports that proposition by attempting to distinguish BallengerConstruction Co. v. State Board of Adjustment, 234 Ala. 377, 175 So. 387
(1937).
In Ballenger, the State Highway Commission had found that the appellant was entitled to receive only part of its claim in a breach-of-contract action against the State Highway Department. 234 Ala. at 379,175 So. at 389. The contract at issue stipulated that the decision of the State Highway Commission "upon any question connected with the execution of the contract shall be final and conclusive." 234 Ala. at 379,175 So. at 388. The appellant appealed to the State Board of Adjustment ("the Board"), and the Board concluded that it lacked jurisdiction to hear the claim. 234 Ala. at 379, 175 So. at 388. The appellant filed in the circuit court a petition for a writ of mandamus to compel the Board to hear its claim. 234 Ala. at 379, 175 So. at 388.
After the action was commenced, the Legislature amended the act that created the Board and empowered it to hear all claims made against State agencies and to order payment from previously appropriated funds to pay damages arising under the claims. 234 Ala. at 379, 175 So. at 388. Under the amended act, the Board no longer had jurisdiction over disagreements arising out of contracts made with the State Highway Department.234 Ala. at 379, 175 So. at 388-89. This Court stated that the Legislature could "repeal the whole appropriation out of which claims may be paid as allowed by the [Board], and no one could gainsay that right. . . ."234 Ala. at 380, 175 So. at 389. This Court held:
 "[W]e find that no vested cause of action was created by law in favor of appellant, and that the right to present and have its claim heard, and if within the statute allowed and paid, was not a contract right, though the claim arose out of contract, but a privilege conferred, and did not become vested so as to destroy the right of the Legislature at a later date to annul it as a claim against the appropriation." *Page 1080 
234 Ala. at 381, 175 So. at 390 (emphasis added).
According to the City, Ballenger stands for the proposition that an appropriation is always subject to repeal, and, thus, that beneficiaries of appropriations have no vested interest in continued appropriations. The City argues that the holding of Ballenger was limited to disavowing interests in future appropriations. However, in Ballenger, the Legislature annulled the appellant's claim against previously appropriated funds by divesting the Board of jurisdiction.234 Ala. at 380, 175 So. at 389. Therefore, this Court in Ballenger recognized that the Legislature has the plenary power to divest, before payment, the right to receive appropriated funds and that an appropriation can never be a debt of the State with respect to § 213 of the State Constitution. 234 Ala. at 380, 175 So. at 389.
In the present action, a promise to distribute revenues is also not enforceable as a debt. Under § 28-3-74, the City was designated as a beneficiary to receive a percentage of net profits, just as the appellant in Ballenger was entitled to funds payable from an appropriation. InBallenger, the Legislature annulled the appellant's claim to an appropriation because no funds had been paid. 234 Ala. at 380,175 So. at 389.
It is clear that the Legislature had the power under the 2001 Act to retroactively cure and validate its prior appropriations without violating a vested right because the funds were never "paid" to the City and the State never owed a debt to the City. For all that appears, the City could have received no proceeds under § 28-3-74, even if the Legislature had never included in the annual appropriations acts provisions for transfers from the operating funds of the ABC Board, if the operating expenses of the ABC Board exceeded its revenues in any particular year.
It is well settled in this State "that it is within legislative competency by an act to ratify the doing of that which has already been done, the doing of which it had the power to authorize in the first instance, where no contract rights or vested rights are in any way violated or impaired."[5] Courtner, 149 Ala. at 85, 43 So. at 371;Ballenger, 234 Ala. at 381, 175 So. at 390 ("the Legislature has full power to take away rights conferred by statute which have not become vested"). The City has failed to prove that it had a vested right in the funds; therefore, the Legislature had the full authority to retroactively cure under the 2001 Act its prior distributions.
The City also contends that the Legislature's transfers from operating funds pursuant to the annual appropriation acts created a new debt in violation of § 213, Alabama Constitution of 1901. Section 213 provides that "no new debt shall be created against, or incurred by this state, or its authority." This Court has held that "debt," within the context of § 213, means "that which the state in any event is bound to pay, an obligation secured by the general faith and credit of the state." Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 316,116 So. 695, 699 (1928).
In Opinion of the Justices No. 346, 665 So.2d 1357, 1361-63 (Ala. 1995), this Court opined that the provisions of a particular house bill that attempted to divert funds, which were "constitutionally required" to *Page 1081 
be paid initially to the State general fund, violated § 213. However, this Court also acknowledged that a new debt may be created without violating § 213 "if no obligation is imposed on the state to pay money." 665 So.2d at 1361. In the present action, the promise to distribute a percentage of "net profits" was not enforceable as a debt, because the funds were not "constitutionally required" to be paid to the City.
Moreover, in this case no "debt" under § 213 existed because any amount paid to the City would be paid solely on the basis of an annual determination of the ABC Board's net profits. In Opinion of the JusticesNo. 100, 252 Ala. 465, 41 So.2d 761 (1949), this Court opined that a proposed bill did not violate the Alabama Constitution:
 "[The bill] assumes the authority of the Legislature to authorize the State to make annual contracts to lease space for its functions with no obligation other than an annual agreement, if and when made, to pay the amount of rentals which may be agreed upon for that year out of current funds available for that purpose; and recognizes the principle that each fiscal year is a fiscal unit and that the State must take care of its obligation each year to pay out of the funds available and appropriated that year for that purpose.
 "That status does not conflict with section 213 of the Constitution as amended since there is no appropriation contemplated to be made for future years payable in contravention of the principle of Hall v. Blan, 227 Ala. 64, 148 So. 601, 607 [(1933)], nor a contract to that effect; and that it neither makes nor contemplates an obligation of the State further than such as is `within the revenues levied and assessed, and in process of collection' for the current year or such as may have been already collected for that year. In re Opinions of Justices, 251 Ala. 91, 36 So.2d 475 [(1948)]; Brown v. Gay-Padgett, 188 Ala. 423, 66 So. 161 [(1914)]; In re Opinions of Justices, 238 Ala. 293, 191 So. 82 [(1939)]."
252 Ala. at 467, 41 So.2d at 763. See also Hillard v. City of Mobile,253 Ala. 676, 683, 47 So.2d 162, 168 (1950). The allocation of a percentage of net profits under § 28-3-74 was to be made annually, without contemplating future transfers or obligating specific sums. The City has failed to prove that it was legally entitled to the funds; thus, the transfers did not violate § 213 because the State was never obligated to pay an amount to the City.
Furthermore, the 2001 Act does not violate § 95, Alabama Constitution of 1901, which provides that the Legislature may not take away a cause of action after an action has been filed. Because no vested right was affected, the 2001 Act may be applied to the instant action, even though it became effective while this action was pending.Ballenger, 234 Ala. at 379-80, 175 So. at 389-90.
The City also contends that the Legislature had no authority to "unearmark" revenue sources by appropriating those revenues in a manner contrary to the earmarking in § 28-3-74. In Childree, supra, this Court was presented with, among others, the issue whether an appropriation in a general appropriation act to state agencies from the Alabama Special Education Trust Fund ("ASETF") violated §§ 45 and 71, Alabama Constitution of 1901. 524 So.2d at 337. Section 45 provides that "[e]ach law shall contain but one subject, which shall be clearly expressed in its title, except general appropriation bills. . . ." The exception for general appropriation bills is limited by § 71, which provides: *Page 1082 
 "The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for the public schools. . . . All other appropriations shall be made by separate bills, each embracing but one subject."
This Court acknowledged that the legislative intent in creating the ASETF was that all revenues from the fund were to be used exclusively for educational purposes. 524 So.2d at 339. Therefore, the funds in the ASETF were earmarked for educational purposes, and, before the funds could be appropriated in a general appropriation bill, the earmarking provisions in the statute creating the ASETF would have to be repealed. 524 So.2d at 341. Disregarding the earmarking provision, would, in effect, repeal it and would violate § 71 of the State Constitution, which limits general appropriations bills to the subject of appropriations. 524 So.2d at 341. Moreover, in Childree this Court held that a repeal of an earmarking provision in an appropriation bill would violate § 45, which limits bills to one subject. 524 So.2d at 341.
The City argues that under Childree, the Legislature does not have the authority to "unearmark" revenue sources by appropriating those revenues for expenditure in a manner contrary to the earmarking. However, inChildree, where the plaintiffs sought declaratory relief only, this Court was not presented with a subsequent act that retroactively cured any rights created under the initial act. Assuming that under Childree the transfer of operating funds from the ABC Board violated §§ 45 and 71 of the Alabama Constitution, the Legislature had the plenary power to accomplish such a transfer by other methods — such as by enacting an act to amend the earmarked percentages of § 28-3-74, as it did in the 2001 Act. At oral argument, the State defendants acknowledged that, procedurally, it would have been "much better" had the Legislature initially amended the earmarking provisions of § 28-3-74, as opposed to accomplishing this same effect by transferring the funds under general appropriation acts. However, it is clear that the Legislature had the plenary power to prospectively amend the earmarked percentages of §28-3-74 and to retrospectively cure the distributions in the earlier years. See McGlothren v. Eastern Shore Family Practice, P.C., 742 So.2d 173
(Ala. 1999) (upholding the retroactive application of an act that amended the qualifications for expert witnesses in a pending lawsuit); Riggs v.Brewer, 64 Ala. 282, 285 (1879) (stating that "[s]tatutes may be repealed by implication, or by express legislative enactment. . . ."); Ballenger,234 Ala. at 381, 175 So. at 389 (stating that the Legislature can repeal a claim against an unpaid appropriation).
The City argues, alternatively, that if the 2001 Act validly cured the improper distribution of the ABC Board's net profits, it includes a savings clause with respect to the instant action. The City contends that the 2001 Act "tacitly acknowledges liability in the instant action and authorizes the payment of monetary damages based upon any judgment rendered in favor of the Plaintiff herein." City's Brief at p. 57. We disagree with the City's interpretation that the retroactive application of the 2001 Act had no effect upon the present action. Section 3 of the 2001 Act provides a mechanism to pay a judgment or attorney fees "in the event" the State defendants are required to pay such fees to the City. The references to this action in the 2001 Act merely address a contingency; they do not recognize the City's right to a monetary award. *Page 1083 
Furthermore, as the State defendants argue, "[m]unicipal powers may be enlarged, abridged or entirely withdrawn at the legislative pleasure."Trailway Oil Co. v. City of Mobile, 271 Ala. 218, 222, 122 So.2d 757, 760
(1960). The State defendants contend that a municipality has no vested right against a legislative enactment that reduces its powers or increases its burdens. See Young Women's Christian Ass'n v. Gunter,230 Ala. 521, 162 So. 120 (1935); Cullman County v. Blount County,160 Ala. 319, 49 So. 315 (1909); Alldredge v. Dunlap, 240 Ala. 27,197 So. 36 (1940). In their reply brief to this Court, the State defendants correctly state that the City fails to "address the argument that a municipality cannot acquire vested rights against retroactive legislative changes." We are not required to provide such authority for the City. Rule 28(a)(10), Ala.R.App.P.[6]
The Legislature's plenary power to enact the 2001 Act to cure retroactively and thereby to validate the prior years' distributions leads us to the conclude that the 2001 Act did not violate any vested right of the City. We find that the 2001 Act is not unconstitutional.
The trial court denied monetary relief to the City because it held that the State defendants were entitled to State immunity. However, because we can affirm a trial court's judgment "if it is right on any ground developed in, and supported by, the record," we affirm the trial court's judgment insofar as it denied monetary relief to the City based upon the validity of the 2001 Act. See Ex parte Ramsay, 829 So.2d 146, 155 (Ala. 2002).
 B. Attorney Fees
Although the City did not prevail on the merits, nonetheless, by filing this action, the City caused legislation to be enacted that it contends secured a benefit to the City. The 2001 Act specifically refers to the present litigation, stating that if the State defendants are "required to pay any judgment or attorney's fees" in the present action, then the State defendants "shall be reimbursed for such judgment and fees out of payments" from § 28-3-74 "before any amount is distributed to any wet city or county."
Generally, this State adheres to the "American rule" of attorney fees, in which each party bears the responsibility of paying its own fees. Exparte Alabama State Bd. of Educ., 810 So.2d 773, 775 (Ala. 2001); Ex parteHorn, 718 So.2d 694 (Ala. 1998); Brown v. State, 565 So.2d 585 (Ala. 1990). In Ex parte Horn, this Court stated:
 "Under the American rule, the parties to a lawsuit bear the responsibility of paying their own attorney fees. However, the law recognizes certain exceptions to this rule, and attorney fees are recoverable when authorized by statute, when provided by contract, or when justified by special equity. In the latter instance, attorney fees may be awarded where the plaintiff's efforts are successful in creating a fund out of which the fees may be paid, or when the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interests of the plaintiff. These have been termed the `common fund' and `common benefit' exceptions to the American rule."
718 So.2d at 702 (citations omitted). In the recent case of State Boardof Education v. Waldrop, 840 So.2d 893 (Ala. *Page 1084 
2002), we recognized that the key distinction between a common-fund theory and a common-benefit theory is that for the former to apply, a pecuniary benefit must be bestowed. See also Campbell v. General MotorsCorp., 19 F. Supp.2d 1260, 1269 (N.D.Ala. 1998).
The trial court awarded attorney fees in the amount of $185,000, including as part of its rationale both the "common-fund" and "common-benefit" theories. The State defendants correctly contend that the attorney fees were improperly awarded under the common-fund theory because no fund was created. Under the common-fund approach, the trial court determines an appropriate percentage and then applies this percentage to a "defined monetary recovery." City of Birmingham v. Horn,810 So.2d 667, 680 (Ala. 2001). This approach "becomes unworkable when the recovery does not involve a quantifiable monetary settlement or damages award." 810 So.2d at 680.
The trial court stated that "[b]ased upon the [2001] Act's prohibition on any future legislative transfers from the operating funds of the ABC Board, the [City's] efforts have essentially created a Common Fund." The 2001 Act, which we uphold against a constitutional challenge, did not require any sum to be paid to the City. The 2001 Act did prohibit future legislative transfers, but this fact does not create a "quantifiable monetary settlement or damages award" from which an award of attorney fees is owed. Horn, 810 So.2d at 680. For all that appears, the Legislature could, in the very next legislative session, repeal the formula in the 2001 Act. The State defendants also argue that the award of attorney fees based upon a common-benefit theory was improper. The trial court stated:
 "This Court further finds that the instant litigation has been successfully prosecuted and has bestowed a common benefit on the [City] and the class of wet cities and counties which it sought to represent, as well as on the citizens of the state. This benefit includes a prohibition against any future legislative transfers of monies made from the operating funds of the ABC Board to the State General Fund or other state agencies. Such efforts have rendered a public service and/or resulted in a benefit to the general public in addition to serving the interests of the Plaintiff."
This Court has held that State funds may be used to award attorney fees to plaintiffs who bestow a common benefit to the named plaintiffs as well as the public. Brown, supra, 565 So.2d at 591-92. Laying to one side concerns over the applicability of Brown to this proceeding where no federally created right to an attorney fee is presented,[7] we must determine whether the City bestowed a common benefit. James v. James,768 So.2d 356, 361 (Ala. 2000); Union Fid. Life Ins. Co. v. McCurdy,781 So.2d 186, 189 n. 3 (Ala. 2000).
We agree with the City that this litigation precipitated the 2001 Act. Under the 2001 Act, the Legislature's annual appropriations of the ABC Board's net profits was replaced by a permanent change in the distribution of those profits. Although the 2001 Act prohibited future transfers made in general appropriation acts, it reduced the percentage available to the City and increased the percentage allocated to the State general fund. Even if we were to conclude that the 2001 Act bestowed a *Page 1085 
benefit upon the City, where is the benefit to the general public? Compare Brown, supra, 565 So.2d at 592 (awarding attorney fees under a common-benefit theory because the general public benefited when the action changed the practice of issuing traffic tickets without an officer's sworn statement), and Bell v. Birmingham News Co., 576 So.2d 669,670 (Ala.Civ.App. 1991) ("The instant case, like Brown, supra, resulted in a benefit to the general public."). If the City did confer a benefit on itself, it was at the expense of the general public for whose benefit the Legislature passes the general appropriation acts. We therefore reverse the trial court's judgment insofar as it awards attorney fees under the common-benefit theory.
 IV. Conclusion
Because the 2001 Act did not affect a vested right of the City, we affirm the trial court's judgment insofar as it denies monetary relief. We reverse the judgment insofar as it awards attorney fees because no common fund was created, and no common benefit was bestowed.
AFFIRMED IN PART; REVERSED IN PART.
See, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., and Houston, J., concur in the result.
[1] Pursuant to Rule 25(d), Ala.R.Civ.P., Governor Bob Riley, who succeeded Governor Siegelman in that office, is automatically substituted as a party.
[2] A "wet" county is defined as "[a]ny county which by a majority of those voting voted in the affirmative in an election" held to legalize the sale and distribution of alcoholic beverages. § 28-3-1(28), Ala. Code 1975.
[3] The City is inconsistent as to time periods in its allegations regarding the diversion of revenues. In its motion for a summary judgment, the City alleges that the revenues were diverted for 30 years. In its brief to this Court, the City alleges that the revenues were diverted for a period in excess of 20 years. Finally, in its reply brief, the City alleges that they were diverted for a period in excess of 10 years.
[4] The appropriation act for the fiscal year 1988-1989 carves out a stated sum directed to the Department of Mental Health ("DMH") and the Department of Public Safety ("DPS"). The appropriation acts for the fiscal years 1989-1990 through 1994-1995 carve out stated funds to the State general fund as well as DMH and DPS, while the acts for the fiscal years 1995-1996 through 1997-1998 limit the transfers to the State general fund.
[5] The City does not claim that it had a contract right to a percentage of the net profits of the ABC Board.
[6] "[I]t is neither this Court's duty nor its function to perform [a party's] legal research." City of Birmingham v. Business Realty Inv. Co.,722 So.2d 747, 752 (Ala. 1998); Green Tree Fin. Corp. of Alabama v.Vintson, 753 So.2d 497, 503 n. 5 (Ala. 1999).
[7] See Waldrop, supra, 840 So.2d at 902 (Lyons, J., concurring specially and noting reservations concerning the consistency of Brown, cited in the main opinion in Waldrop, with Art. I, § 14, Ala. Const. of 1901).