These appeals arise from a judgment holding that the general appropriation act (1987 Ala. Acts No. 87-715) is unconstitutional insofar as that Act makes particular appropriations from the Alabama Special Education Trust Fund ("the ASETF") to various agencies of the state. The question presented is whether appropriations to state agencies can be made from the ASETF in a general appropriation bill.
The Constitution of 1901, § 45, provides in pertinent part:
 "Each law shall contain but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes. . . ."
The exception for general appropriation bills is limited by § 71:
 "The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for the public schools. . . . All other appropriations shall be made by separate bills, each embracing but one subject."
While the 1987 Legislature was in session, the members of this Court answered an advisory opinion request from the Legislature with the opinion that the omnibus "education appropriation bill," while not a § 71 general appropriation bill, could stand as a § 45 single-subject bill because the subject of "public education" had historically been treated comprehensively in such appropriation bills. Opinion of theJustices No. 323, 512 So.2d 72 (Ala. 1987). The opinion stated that no appropriations could be made in such a bill to institutions not controlled by the state, and then expressed a reservation as to appropriations to state agencies not obviously educational in nature:
 "The appropriations to state agencies must come within the subject of public education. We cannot test the specific appropriations in the bill, however, because the bill in most cases gives only general descriptions of the recipients. *Page 338 
For example, an appropriation to the department of public health for immunizations of school children and for public school food sanitation probably comes within the subject, but a decision would have to wait for a contested case."
Id., at 77.
After that opinion issued, the legislature removed a number of appropriations from the education appropriation bill and added them to the general appropriation bill that became Act No. 87-715, the act now at issue. Appropriations in Act No. 87-715 from the ASETF to the following entities are now contested: the Department of Finance; the Alabama Academy of Honor; the Alabama State Council on the Arts and Humanities; the State Building Commission; the Department of Education; the Department of Examiners of Public Accounts; the Alabama Firefighters' Personnel Standards and Education Commission; the Alabama Law Institute; the Legislature; the Alabama Public Library Service; the Alabama Board of Nursing; the Commission on Physical Fitness; the Space Science Exhibit Commission; the Department of Youth Services; the Alabama Small Business Development Consortium; the Department of Public Health; the Alabama Department of Economic and Community Affairs; the Department of Mental Health and Mental Retardation; and the Office of Prosecution Services.
On August 27, 1987, Dr. Paul Hubbert and Margaret Ann Hubbert filed their complaint in the instant case, naming as defendants George C. Wallace, Jr., as treasurer of the State of Alabama, and Robert Childree, as comptroller of the State of Alabama. Many of the above-named recipients of the appropriations from the ASETF intervened as defendants.
The trial court entered judgment for the plaintiffs on November 13, 1987, but stayed the effect of its judgment for 45 days. By order of December 17, 1987, this Court extended the stay during the pendency of this appeal. The case was argued and submitted on February 8, 1988. Because we shall address separate issues raised by the various parties, we deem it useful to itemize the briefs filed. Three separate appellants' briefs have been filed: one for defendant Childree; one for defendant/intervenor Alabama Space Science Exhibit Commission ("the Exhibit Commission"); and one for defendants/intervenors Alabama Public Library Service, Alabama Firefighters Personnel Standards and Education Commission, Alabama Board of Nursing, and the Governor's Commission on Physical Fitness ("the APLS parties"). Several other intervenor/defendants have appealed, but they have simply joined Childree's brief. An amicus curiae brief, arguing in support of the appropriations, has been filed on behalf of 15 legislators. All but the APLS parties have also filed reply briefs. The appellees' brief filed on behalf of the Hubberts provides the only argument in support of the judgment.
Childree's position is shown in the following summary of the primary argument in his brief, to which we have added the numbers in brackets:
 "It will be shown below first that [1] the appropriations are indeed for expenses of 'the executive, [etc.,] departments of the state,' and then that [2] they are rendered no less so merely because they are made to state agencies for administration of state educational functions at the state level. That [3] the appropriations in question are for 'ordinary expenses' within the meaning of that term as used in § 71 and the like constitutional provisions of other states will next be addressed. Consideration will then be given to [4] whether coverage of appropriations for such expenses under § 71's authorization of appropriations for 'ordinary expenses of the executive, [etc.,] departments of the state' is expunged somehow by something in § 71 itself, or by some other means."
Childree essentially takes as granted that the appropriations at issue are for "educational purposes" and then argues that they may be included in a general appropriation bill because they are made to state agencies for ordinary expenses. The Exhibit Commission takes a different tack, disputing the view that the appropriations *Page 339 
are for educational purposes, and arguing that they may nevertheless be funded with ASETF moneys because there is not a constitutional limitation on the majority of ASETF moneys requiring that they be used for education, but only a statutory earmarking that is not binding on the legislature. The APLS parties and the legislators take the same position as Childree; that is, they assume (for most of their argument) that ASETF moneys must be used for educational purposes and argue that these appropriations are both ordinary expenses and educational functions and so can be made from ASETF moneys in a general appropriation bill.
The issues regarding whether educational appropriations can be made in a general appropriation bill arise because this Court has expressed the opinion and held on several occasions that the phrase "public schools" in § 71 allows appropriations only for grammar and high schools, i.e., not for colleges, universities, trade schools, and the like. See Opinion of theJustices No. 323, 512 So.2d 72 (Ala. 1987); Alabama EducationAss'n v. Board of Trustees of the Univ. of Alabama,374 So.2d 258 (Ala. 1979); State Tax Comm'n v. Board of Ed. of JeffersonCounty, 235 Ala. 388, 179 So. 197 (1938); Opinion of theJustices No. 31, 229 Ala. 98, 155 So. 699 (1934); Elsberry v.Seay, 83 Ala. 614, 3 So. 804 (1888).
On the other hand, the issues regarding whether "non-educational" appropriations can be made from the ASETF arise because the acts creating and allocating revenues to the ASETF specified that the revenues collected under the specified taxes
 "shall be set apart as a Trust Fund for educational purposes only, to be designated as the Alabama Special Educational Trust Fund, and shall be kept separate and apart from all other funds in the State Treasury, and shall be paid out by the Treasurer on lawful appropriations, hereafter made specially from such funds by the Legislature of Alabama for educational purposes."
1927 Ala. Acts No. 163, § 2-K, at p. 148 (emphasis added). Similar language was included in 1935 Ala. Acts No. 194, § 405, at p. 573. The latter act was not only a general revenue act, but also adopted a revenue code that was the source of most of the "Revenue and Taxation" title, title 40, of the 1975 Code of Alabama.
These revenue acts of 1927 and 1935, which created and provided the initial funding for the ASETF, are the corollaries to the first "education appropriation" acts. This Court has referred to 1927 Ala. Acts No. 382 as the first of the modern omnibus education appropriation acts, Opinion of the JusticesNo. 323, supra, at 76, and cited 1935 Ala. Acts No. 326 as a succeeding "public education" appropriation act, id., at 77. Thus, the Legislature created and funded the ASETF at the same time as it began passing the comprehensive education appropriation bills that are primarily made up of appropriations from the ASETF.
Shortly after the ASETF was created, the majority of the income tax was constitutionally directed to be deposited to the credit of the ASETF, "to be used for the payment of public school teachers salaries only." Const. of 1901, amend. No. 61, proposed and ratified in 1947.
Other taxes have been enacted and earmarked to the ASETF, sometimes including language such as "for educational purposes only," sometimes not. These include at least portions of the revenues generated by the sales tax, Ala. Code 1975, § 40-23-35, and the use tax, § 40-23-85; the public utilities gross receipts tax, § 40-21-87, and the utility service use tax, §40-21-107; taxes on rentals of personal property, § 40-12-227, and sales of automotive vehicles, § 40-23-108; the excise tax on brewed beverages, § 28-3-184(c)(3); and certain insurance premium taxes, §§ 27-4-4(a)(2) and -5(c)(2).
The original taxes funding the ASETF were license and privilege taxes on railroads; telegraph businesses; telephone businesses; express companies; hydro-electric power businesses; coal mines; iron ore mines; other mines, quarries, and sand and gravel pits; sleeping car companies; and sellers of cigars and cigarettes. See 1927 Ala. Acts No. 163, §§ 2 through 2-J. The *Page 340 
legislature carried these[1] forward with the same earmarking in the 1935 general revenue act cited above, 1935 Ala. Acts No. 194, § 405, and added to the ASETF receipts from a license tax on stores, id., Article XIII, Chapter 3.
The greater part of these license taxes[2] are still earmarked to the ASETF either under the chapters imposing the tax, see Ala. Code 1975, § 40-25-23,[3] or by virtue of § 40-1-31, or both. Section 40-1-31 states that the revenues credited to the ASETF are "to be used for educational purposes." Its predecessor, Ala. Code 1940, t. 51, § 910, stated that the funds "shall be kept separate and apart from all other funds in the treasury and shall be paid out by the treasurer on lawful appropriations made especially from such funds by the legislature of Alabama, for educational purposes," i.e., it tracked the language of the 1927 and the 1935 acts.
Thus it can be seen that the ASETF is a statutory creation, except insofar as it is funded by the income tax constitutionally earmarked for teachers' salaries. The Exhibit Commission's brief addresses this aspect of the issues before us more squarely than the other appellants' briefs. Therefore, the most significant question is whether appropriations from the ASETF must be for educational purposes. Only if that question is answered in the affirmative would we be required to answer the question of whether such appropriations can be made in a general appropriation bill.
In determining the nature and effect of the restrictions on funds placed in the ASETF, an important fact to be considered is that all of the provisions earmarking funds for the ASETF, except the income tax provisions in amendment 61, have been enacted in revenue acts. The distinction between revenue bills and appropriation bills appears in § 45, which lists general appropriation bills separately from general revenue bills as exceptions to the single-subject requirement. In Nachman v.State Tax Comm'n, 233 Ala. 628, 634, 173 So. 25, 30 (1937), it was argued that an act imposing a license tax on retail stores and places of amusement and "appropriating" (appellant's term, not the statute's) the money "first, to the relief of the owners of homesteads to the extent of $2,000.00 of property; and, second, to the Educational Trust Fund," violated both § 45's single-subject requirement and § 71's requirement that all appropriations not in general appropriation bills be made by separate bills.
The Court answered the argument as follows:
 "It is urged that the framers of the Constitution with great care separated the two subjects, 'even in the exception as to general revenue bills and general appropriation bills in section 45.' It is also insisted 'logrolling' could not be prohibited if the two subjects can be combined into one; that one is a burden, while the other is a benefit.
 "In reply to this insistence it is sufficient to point out that the act does not undertake to make any appropriation within the meaning of section 71 of the Constitution. It is undoubtedly within the competence of the Legislature in levying a tax to provide, in the same bill, into what fund of the State the tax money when collected shall be paid, whether into the general fund, or into any special fund. It is but earmarking . . . the fund, thereafter to be expended, on due appropriation, for the purposes for which the tax was levied and collected. To provide that certain funds derived from particular sources shall be paid and used for designated purposes of government is in no sense an appropriation as contemplated by section 71 of the Constitution."
233 Ala. at 634, 173 So. at 30 (emphasis added). *Page 341 
In 1980, seven Justices issued an opinion following this holding. Opinion of the Justices No. 266, 381 So.2d 187 (Ala. 1980).
If earmarking is not appropriating, but rather a matter properly included in a revenue bill, the converse is also true: the removal or disregard of earmarking is not a matter properly to be included in an appropriation bill. Presumably, the earmarking could be removed in a proper single-subject bill or in a properly constituted revenue bill, but until such an action is taken, no appropriation bill can appropriate such funds other than as they were earmarked.
The point that earmarking cannot be repealed by an appropriation bill becomes even clearer when considered in light of the fact that the earmarking provisions are now substantive parts of the Code. See, e.g., § 40-1-31. Therefore, disregard of earmarking would violate the Code, and repeal of earmarking would amend the Code. For the legislature to either disregard or repeal earmarking in an appropriation bill would violate § 71 or § 45, for the same reasons as discussed above regarding revenue bills.
Thus, any appropriation bill appropriating ASETF funds other than as specified in the acts creating the ASETF and in the Code would violate § 71 or § 45 of the Constitution.
We do not find it significant that some of the revenue bills earmarking money for the ASETF did not include the requirement that the funds be spent for educational purposes. The 1927 and 1935 general revenue acts creating the ASETF specified that the funds therein were to be paid out only on appropriations "made specially . . . for educational purposes." The operative portion of this language is carried forward into § 40-1-31. Although that section refers in terms only to the license taxes, it nevertheless carries forward the original legislative intent that all money in the ASETF must be spent for educational purposes.
The question, then, is whether such appropriations can be made in a general appropriation bill. We note that § 71 specifically states that appropriations for the public schools can be made in a general appropriation bill, and those appropriations, as limited by the decisions interpreting the term "public schools," can be made from the ASETF. Therefore, the only question is whether appropriations for the ordinary expenses of the executive, legislative, and judicial branches can be made from the ASETF.
We do not find decisive the argument that the appropriations at issue are "ordinary expenses" and at the same time "for educational purposes." This may in some sense be true, but the argument could too easily be taken to an extreme. For example, it could be said that highway construction is both an ordinary expense of the Highway Department and an expenditure for educational purposes because it allows the transportation of children to school. Some of the claims that the appropriations at issue are for educational purposes are nearly as tenuous as this example. If such arguments were sufficient to justify the inclusion of ASETF moneys in general appropriation bills, the requirement that those funds be used for educational purposes could become meaningless.
Whether or not appropriations in the general appropriation bill can have an incidental educational purpose, theymust be for ordinary expenses of the executive, legislative, and judicial branches. Conversely, appropriations from the ASETF must be for educational purposes. Therefore, to allow appropriations from the ASETF in a general appropriation bill would be to impose a test in addition to those imposed by § 71, i.e., is it for educational purposes? To graft such a species of appropriations onto a general appropriation bill would violate both the spirit and the letter of §§ 71 and 45.
The Chief Justice reads this opinion as holding that no appropriations with an educational purpose can be made in the general appropriation bill, except appropriations for the "public schools." That is not the case. What we do hold is that appropriations from the ASETF cannot be made *Page 342 
in a general appropriation bill unless they are for the "public schools." To hold otherwise would lead to interminable disputes with no fixed guidelines as to what "ordinary expenses" have a sufficient "educational purpose" to be funded from the ASETF in a general appropriation bill. We note that the Chief Justice quotes from Temple Lodge No. 6, A.F. A.M. v. Tierney, 37 N.M. 178, 20 P.2d 280 (1933), to the effect that "educational purposes" is a "broad expression" imposing "a severe task of interpretation." The Chief Justice's attempt to set forth a definition by which ASETF appropriations could be included in general appropriation bills is itself so broad that "The line of demarcation cannot be projected." Id.
For the foregoing reasons, we hold that the appropriations at issue cannot be made from the ASETF in a general appropriation bill. To the extent that the judgment below so holds, it is affirmed.
AFFIRMED.
MADDOX, JONES, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., concurs in part and dissents in part.
[1] Except for the taxes on telegraph businesses and "other mines, quarries, and sand and gravel pits."
[2] Except for those on coal mines and sleeping car companies.
[3] The cigar and cigarette tax was originally called a license tax, see 1935 Ala. Acts No. 194, sched. 159, p. 530, but is now divided into a sales tax, Ala. Code 1975, §40-25-1 et seq., and a use tax, § 40-25-40 et seq.