[1] Donald Siegelman, Henry Mabry, William Pryor, and Lucy Baxley no longer hold the offices they held when Jordan filed the complaint in this action. Rule 25(d)(1), Ala. R. Civ. P., provides:
 "When a public officer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution."
See also Rule 43(b), Ala. R.App. P.
Billy Ray Jordan appeals from a summary judgment entered in favor of Joseph Borg and Harold Kushner, director and chairman, respectively, of the Alabama Securities Commission ("the ASC"), the Governor, the attorney general, the state comptroller, the state finance director, and the state treasurer (referred to hereinafter collectively as "the State officials"), in an action challenging the legislature's appropriation, for use in the State general fund, of funds Jordan alleged were "earmarked" for the ASC. We affirm.
 Facts and Procedural History
On September 10, 2002, Jordan filed the present action in the Montgomery Circuit Court. In his complaint, Jordan asserted that he had standing to bring his action because of his status as a taxpayer and citizen of the State of Alabama, and he purported to act on behalf of a class consisting of all taxpayers and citizens of the State of Alabama.
Jordan alleged in his complaint that "[i]n order to fund its operations, the Alabama Securities Commission charges and collects certain fees authorized by the Alabama Legislature. These fees are specifically earmarked [by statute] for the use and benefit of the Alabama Securities Commission." Jordan asserted, however, that "over the last several years" the State officials had "raid[ed]" funds earmarked for the ASC by transferring those funds to the State general fund through general appropriations bills passed by the legislature. Jordan alleged that the transfer of the earmarked funds to the general fund was "in clear violation of the Alabama Constitution and Alabama law, as set forth in Childree v. Hubbert,524 So.2d 336 (Ala. 1988)." Jordan sought a judgment declaring that "the transfers of the [ASC's] earmarked funds to the general fund in a general appropriations bill [were] unconstitutional, void, illegal, and unenforceable," and he asked the court to permanently enjoin the "transfer of earmarked funds of the [ASC] to the general fund" and to require the State officials to "repay all funds earmarked to the [ASC] which were transferred to the general fund in any general appropriations bill, along with interest thereon." Jordan also asked the court to award a "reasonable" attorney fee.
Jordan and the State officials filed cross-motions for a summary judgment. The trial court entered a summary judgment in favor of the State officials on October 22, 2004. Among other things, the trial court held that Jordan did not have standing as a taxpayer to bring the action.[2] *Page 889 
 Standard of Review
"`This Court's review of a summary judgment is de novo.Williams v. State Farm Mut. Auto. Ins. Co.,886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;Blue Cross Blue Shield of Alabama v. Hodurski,899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758
(Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce "substantial evidence" as to the existence of a genuine issue of material fact. Bass v.South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989); Ala. Code 1975, § 12-21-12. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Westv. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871
(Ala. 1989).'" Prince v. Poole, 935 So.2d 431, 442
(Ala. 2006) (quoting Dow v. Alabama Democratic Party,897 So.2d 1035, 1038-39 (Ala. 2004)).
 Analysis
The State officials contend that the trial court properly entered a summary judgment in their favor because, they argue, Jordan does not satisfy the test for taxpayer standing as stated in Broxton v. Siegelman, 861 So.2d 376, 383-86
(Ala. 2003). We agree.[3]
Broxton involved a challenge to the expenditure of funds for proposed changes to landscaping in front of the State Capitol. Broxton, whose action was based on his status as a resident and taxpayer of Alabama, argued that expenditures by the State for the proposed changes would violate a statutory prohibition. 861 So.2d at 376-77. This Court determined that Broxton did not have standing to bring a taxpayer action because the challenged expenditures were ultimately to be made from federal funds rather than from state funds.861 So.2d at 385.
In discussing the development of the concept of taxpayer standing under Alabama law, this Court in Broxton
quoted Hunt v. Windom, 604 So.2d 395 (Ala. 1992):
 "`[I]n Zeigler v. Baker, 344 So.2d 761
(Ala. 1977), . . . this Court held that [a *Page 890 
taxpayer's challenge] would lie and stated:
 "`"In a long line of decisions this Court has recognized the right of a taxpayer to challenge, either as unconstitutional or as not conforming to statute, the expenditure of public funds by county officers. Court of County Revenues v. Richardson, 252 Ala. 403, 41 So.2d 749 (1949); Poyner v. Whiddon, 234 Ala. 168, 174 So. 507
(1937); Thompson v. Chilton County, 236 Ala. 142, 181 So. 701 (1938); Travis v. First Nat. Bank of Evergreen, 210 Ala. 620, 98 So. 890 (1924); Reynolds v. Collier, 204 Ala. 38, 85 So. 465
(1920). The right of a taxpayer to challenge the unlawful disbursement of state funds likewise is unquestioned. Goode v. Tyler, 237 Ala. 106, 186 So. 129 (1939) (`. . . this Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a state officer in the unlawful disbursement of state funds.'); Hall v. Blan, 227 Ala. 64, 148 So. 601 (1933); Turnipseed v. Blan, 226 Ala. 549, 148 So. 116 (1933). The latter two cases dealt with the constitutionality of disbursements, while Goode involved expenditures to be made under purported statutory authority. The Supreme Court of Illinois wrote to this principle in Fergus v. Russel, 270 Ill. 304, 110 N.E. 130 (1915):
 "`"`We have repeatedly held that taxpayers may resort to a court of equity to prevent the misapplication of public funds, and that this right is based upon the taxpayer's equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation.'"
 "`344 So.2d at 763-64.
 "`More recently, in Lee v. Bronner, 404 So.2d 627 (Ala. 1981), the Court again rejected the argument that only the Governor or the attorney general may bring an action to challenge the illegal expenditure of state funds, and in that case the Court quoted from Zeigler v. Baker, supra:
 "`"`If a taxpayer does not launch an assault, it is not likely that there will be an attack from any other source, because the agency involved is usually in accord with the expenditure. There may be instances in which the affected public official might pursue the matter. The Attorney General would be an appropriate officer to bring such a suit, but in some instances this is not done and it is in such cases that it is only the taxpayer's attack which preserves the public treasure.'"
 "`404 So.2d at 629 (Zeigler was quoting from Department of Administration v. Home, 269 So.2d 659 (Fla. 1972)).'"
Broxton, 861 So.2d at 384-85 (quoting Hunt,604 So.2d at 396-97 (emphasis added in Hunt)).
Crucial to the determination that Broxton lacked standing was this Court's conclusion that "it is [the] liability to replenish the public treasury through the payment of taxes that gives a plaintiff in a taxpayer's action standing." 861 So.2d at 385. Although state funds were used initially to make the expenditures Broxton challenged, all of those expenditures ultimately were reimbursed with federal funds. Consequently, this Court held that no state funds were expended and that Broxton, as a taxpayer, therefore did not have standing to sue because he would "not face the liability of replenishing the state funds." 861 So.2d at 385.
Broxton is controlling in Jordan's case. Jordan does not challenge the following *Page 891 
portions of the trial court's summary-judgment order:
 "The [ASC] is a self-funded state agency,
collecting fees for the registration of securities, brokers, and dealers who sell securities, and investment advisers and representatives who, for a fee, advise clients concerning the purchase of securities. The [ASC] also assesses and collects fines from entities and individuals whom it finds guilty of violating the registration provisions of [the act establishing the ASC]. . . . Over a number of years, the amount of revenue [generated from fees and fines collected by the ASC] that has been designated for use by the [ASC] has not been spent by the [ASC] and has been held in a `reserve' account. On almost an annual basis, the Legislature has taken, or `appropriated,' certain of those surplus funds for use by the general fund in its efforts to fund other state agencies.
 "No party has alleged that any of the money so appropriated has been misspent or wasted by either the [ASC] or any other named defendant. . . . [Jordan] merely challenges the method by which the Legislature has acquired the funds from the [ASC] in order to provide more revenue for the state's general fund.
 "It is undisputed that the [ASC] receives no revenue from any tax source and no money from the general fund. No tax dollars are expended by the [ASC] in its operations, no tax dollars are affected by any transfer of funds from the [ASC's] surplus fund to the general fund."
(Emphasis added.) Thus, the alleged "expenditures" Jordan challenges — that is, the transfer of surplus funds from the ASC to the State general fund — will not cause Jordan, as a taxpayer, to "face the liability of replenishing the state funds" at issue. Broxton, 861 So.2d at 385.
Jordan argues that "[o]nce moneys are deposited into the state treasury, these moneys become state funds and belong to all its citizens." From this, he concludes that he has standing as a taxpayer to bring his action because he challenges the wrongful transfer of "state funds." However, this Court inBroxton rejected a similar argument. 861 So.2d at 385
("Broxton also argues that state funds are used, because at the moment of the reimbursement, the federal funds become state funds, and the property of the state. Again, this argument must fail, because as stated above, it is the liability to replenish public funds that gives a taxpayer standing to sue, and there is no question that here there is no liability to replenish state funds."). It is as true in Jordan's case as it was inBroxton that "it is the liability to replenish public funds that gives a taxpayer standing to sue, and there is no question that here there is no liability to replenish state funds." 861 So.2d at 385.
Finally, Jordan makes what is essentially a taxpayerstanding-by-necessity argument; that is, he argues that if a taxpayer is not allowed to bring the challenge he has brought, there is no one else who will do so. To support his argument, Jordan cites language from Knutson v.Bronner, 721 So.2d 678, 682 n. 6 (Ala. 1998), in which this Court stated: "There might be cases in which a taxpayer's standing is recognized because no one else may bring the action." Jordan also cites the following language fromZeigler v. Baker, 344 So.2d 761, 764 (Ala. 1977):
 "'If a taxpayer does not launch an assault, it is not likely that there will be an attack from any other source, because the agency involved is usually in accord with the expenditure. There may be instances in which the affected public official might pursue the matter. The Attorney General would be an appropriate *Page 892 
ate officer to bring such a suit, but in some instances this is not done and it is in such cases that it is only the taxpayer's attack which preserves the public treasure.'"
(Quoting Department of Admin, v. Home, 269 So.2d 659
(Fla. 1972).)
We disagree with Jordan's argument in this regard. This Court in Broxton quoted the exact passage fromZeigler cited by Jordan. 861 So.2d at 384-85. Even so,Broxton concluded that the question of a taxpayer's standing to challenge an expenditure or transfer of funds is determined by whether the alleged wrongful expenditure will cause the taxpayer to suffer "the liability to replenish the public treasury through the payment of taxes." 861 So.2d at 385.
More importantly, the undisputed evidence in the record shows that the ASC is self-funded through the collection of "fees for the registration of securities, brokers, and dealers who sell securities, and investment advisers and representatives who, for a fee, advise clients concerning the purchase of securities" and through the assessment and collection of "fines from entities and individuals whom it finds guilty of violating the registration provisions of [the act establishing the ASC]." (Trial court's order.) Other than asserting that those individuals or entities who pay fees or fines to the ASC have not brought a challenge to the transfers Jordan seeks to invalidate, Jordan has neither suggested nor shown that they would not have standing to do so.[4]
In response to the State officials' motion for a summary judgment, Jordan has not presented substantial evidence indicating that he has standing as a taxpayer to bring his action, because he has not offered evidence showing that any deficiency created by the challenged transfers will cause him to be liable for replenishing the public treasury. Therefore, Jordan does not have standing as a taxpayer to bring his action.[5]
 Conclusion
The trial court's summary judgment in favor of the State officials is affirmed.
AFFIRMED.
SEE, LYONS, WOODALL, and PARKER, JJ., concur.
NABERS, C.J., recuses himself.
[2] The trial court also held that even if Jordan had standing as a taxpayer, his claims against the State officials were barred by the doctrine of State immunity. Because the trial court correctly determined that Jordan does not have standing to bring the action, we express no opinion as to whether the doctrine of immunity bars Jordan's claims. Likewise, the conclusion that Jordan lacks taxpayer standing pretermits any consideration of his claim that the challenged transfers violate § 45 and § 71, Ala. Const. 1901.
[3] We analyze Jordan's contention that he has standing as a taxpayer under Broxton because its statement of the test for taxpayer standing disposes of Jordan's claims. We note, however, that Jordan's complaint asked the court to require the State officials to "repay all funds earmarked to the [ASC] which were transferred to the general fund in any general appropriations bill, along with interest thereon." To the extent Jordan's complaint sought to recover funds that were alleged to have been wrongfully expended, Jordan did not have standing as a taxpayer to do so. Beckerle v. Moore,909 So.2d 185, 187-89 (Ala. 2005) (holding that a taxpayer has no standing to sue a State official to recover public funds allegedly wrongfully expended because of the official's acts).
[4] Instead, Jordan has argued essentially only that those individuals or entities would have no incentive to challenge the transfers because "[o]nce the fees that were paid to the [ASC] have been paid into the state treasury by those persons required to pay them, those persons that paid the fees have no further liability for those fees." (Jordan's brief, p. 25.) However, without expressing any opinion on whether they would have standing to challenge the ASC transfers, we note that those individuals or entities who have paid fees or fines to the ASC do not appear to have any less incentive than does Jordan to challenge the transfers. As the State officials argue, Jordan's action, if successful, could have the ironic result ofincreasing Jordan's liability as a taxpayer. This is so, the State officials contend, because the legislature could choose to use funds derived from tax revenues to replenish the funds it has allegedly "appropriated" to the general fund from the ASC funds.
[5] Jordan's reliance on Childree v. Hubbert,524 So.2d 336 (Ala. 1988), is misplaced. Although standing was not an issue addressed by this Court in Childree, the plaintiff-taxpayers in that case had standing because they challenged the legislature's transfer of funds from the Alabama Special Education Trust Fund ("the ASETF") through general appropriations bills. 524 So.2d at 337. The ASETF, unlike the ASC, is funded by taxes, 524 So.2d at 339-10; therefore the plaintiff-taxpayers in Childree would have "face[d] the liability of replenishing the state funds" at issue. *Page 893