*837 WOODALL, Justice.
Governor Bob Riley, State Treasurer Kay Ivey, Finance Director James Allen Main, and Comptroller Robert L. Childree (hereinafter referred to collectively as “the officials”) appeal from a preliminary injunction entered against them in an action filed by Luther S. Pate IV. The officials argue, in pertinent part, that Pate does not have standing to maintain the action. We agree. Consequently, we vacate the preliminary injunction, dismiss the action, and dismiss this appeal.

I. Factual Background

This dispute arose following this Court’s decision in Exxon Mobil Corp. v. Alabama Department of Conservation & Natural Resource, 986 So.2d 1093 (Ala.2007). That decision affirmed a judgment entered against Exxon Mobil (“the company”) insofar as it awarded certain compensatory damages for the underpayment of oil and gas royalties owed to the State of Alabama by the company under offshore leases. On remand, the Montgomery Circuit Court entered a final judgment in the amount of $121,511,231. Of that amount, $58,174,033 were compensatory damages for the underpayment of oil and gas royalties. The remaining $63,337,198 represented 12% interest due under § 9-17-33, Ala.Code 1975, and § 8-8-10, Ala.Code 1975. The company paid the judgment, and the officials were responsible for allocating the proceeds to the appropriate State funds.
At the center of this dispute is Amendment No. 450 to the Alabama Constitution of 1901, which established the Alabama Trust Fund (“the Trust Fund”).[1] The Trust Fund receives and manages 99% of the oil and gas capital payments derived from the State’s offshore leases for the production of oil, gas, or other hydrocarbons. The remaining 1% is paid to the Lands Division of the Department of Conservation. Once the oil and gas capital payments are deposited into the Trust Fund, the board of trustees of the Trust Fund is responsible for investing the oil and gas capital payments for the purpose of “produc[ing] the greatest trust income over the term of such investments while preserving the trust capital.” Amendment No. 450, § 5(b). Ten percent of the trust income must be reinvested in the Trust Fund. Amendment No. 450, § 4(c). The remaining income, which includes all interest and dividends, as well as up to 75% of capital gains, is paid directly into the general fund and, subject to two conditions, is “subject to appropriation and withdrawal by the legislature.” Amendment No. 450, § 5(a). In any year in which the income of the Trust Fund exceeds $60 million, 10% of the income must be distributed to the Municipal Government Capital Improvement Fund and 10% must be distributed to the County Government Capital Improvement Fund. See § 219.04, Ala. Const.1901 (formerly Amend. No. 666, Ala. Const. 1901). Also, 10% of each year’s trust income, not to exceed $15 million, must be distributed to the Alabama Forever Wild Land Trust. See § 219.07, Ala. Const. 1901 (formerly Amend. No. 543). The current balance of the Trust Fund is approximately $3 billion.
Nine trustees serve on the board of trustees of the Trust Fund. Those trustees include the governor, who serves as chairman; the finance director, who serves as vice chairman; and the state treasurer, who serves as secretary. Three other trustees are appointed by the governor; two others by the lieutenant governor; and another by the speaker of the house of *838 representatives. See Amendment No. 450, § 3(a)-(f).
After the company paid the amount of the judgment, Finance Director Main requested an opinion from the attorney general concerning the proper allocation of the proceeds between the general fund and the Trust Fund. Consistent with a written opinion of the attorney general, the officials deposited the compensatory damages for the underpayment of oil and gas royalties, less attorney fees and costs, into the Trust Fund. Also consistent with that opinion, they deposited the interest received into the general fund.
Pate, an Alabama citizen and taxpayer, filed a “Complaint for Declaratory Judgment and Injunctive Relief and Petition for Writ of Mandamus” in the Montgomery Circuit Court, challenging the deposit of the interest into the general fund. He requested declaratory relief, mandamus relief, and preliminary and permanent in-junctive relief that would require the officials to move the interest from the general fund to the Trust Fund. Pate filed a motion for a preliminary injunction, and the officials responded to the motion. Also, the officials filed a motion to dismiss. In both their response and their motion, the officials raised the issue of Pate’s standing to bring the action.
On April 10, 2008, the trial court held a hearing on Pate’s motion for a preliminary injunction. Pate presented no evidence at the hearing. On April 15, without addressing the issue of Pate’s standing, the trial court granted the requested preliminary injunctive relief and ordered the officials “to immediately transfer into the ... Trust Fund all monies received as part of the Exxon final judgment, less appropriate legal fees, that have not been heretofore paid into such trust fund.” The officials timely appealed to this Court. See Rule 4(a)(1)(A), Ala. R.App. P.

II. Discussion

“When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). Action taken by a trial court lacking subject-matter jurisdiction is void. 740 So.2d at 1029. Of course, “a void order or judgment will not support an appeal.” Gallagher Bassett Servs., Inc. v. Phillips, 991 So.2d 697, 701 (Ala.2008).
“[Standing turns on whether the party has suffered an actual injury and whether that injury is to a legally protected right.” Carey v. Howard, 950 So.2d 1131, 1135 (Ala.2006). A “ ‘ “mere ‘interest in a problem[,]’ no matter how longstanding the interest and no matter how qualified the [plaintiff] is in evaluating the problem, is not sufficient by itself to render the [plaintiff] ‘adversely affected’ or ‘aggrieved’ so as to establish standing.”’” Ex parte Richardson, 957 So.2d 1119, 1125 (Ala.2006) (quoting Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253, 1260 (Ala.2004) (See, J., concurring specially)). Instead, an “actual or imminent, particularized, concrete, and palpable injury ... is required for a showing of standing.” Town of Cedar Bluff, 904 So.2d at 1261 (See, J., concurring specially).
“ ‘The right of a taxpayer to challenge^ either as unconstitutional or as not conforming to statute,] the unlawful disbursement of state funds ... is unquestioned.’ ” Hunt v. Windom, 604 So.2d 395, 396 (Ala.1992) (quoting Zeigler v. Baker, 344 So.2d 761, 764 (Ala.1977)). However, recent decisions have emphasized that “ ‘it is the liability to replenish public funds that gives a taxpayer standing to sue.’” Jordan v. Siegelman, 949 So.2d 887, 891 (Ala.2006) (quoting Broxton v. Siegelman, 861 So.2d 376, 385 (Ala.2003)).
*839 The Trust Fund is, insofar as its purposes are concerned, no different than a charitable trust. See § 19-3B-405(a), Ala.Code 1975 (“A charitable trust may be created for the relief of poverty, the advancement of education ..., the promotion of health, governmental or municipal purposes, or other purposes the achievement of which is beneficial to the community.”). Also, the uncertainty of the ultimate recipients of the income from the Trust Fund closely resembles a common characteristic of a charitable trust. See Neal v. Neal, 856 So.2d 766, 780 (Ala.2002). “ ‘[B]enefieia-ries with a sufficient special interest in the enforcement of a charitable trust can institute a suit as to that trust.’ ” Rhone v. Adams, 986 So.2d 374, 377 (Ala.2007) (quoting Jones v. Grant, 344 So.2d 1210, 1212 (Ala.1977)). However, “mere potential beneficiaries, whose interest is no greater than the interest of all the other members of a large class of potential beneficiaries of a charitable trust, have no standing to maintain an action for the enforcement of the trust.” Rhone, 986 So.2d at 377 (emphasis added).
With these principles in mind, we turn to the issue of Pate’s standing to insist that the interest on the compensatory-damages award that was deposited in the general fund be transferred to the Trust Fund. Pate alleges that he has standing both as a taxpayer and as an intended beneficiary of the Trust Fund to challenge the deposit of the moneys to the general fund. However, it is clear that he has no standing in either capacity.
Pate’s claim of standing as a taxpayer must fail, because the Trust Fund receives no tax revenue; it is funded only from royalties from the production of oil and gas under offshore leases. Consequently, as Pate admits, no taxpayer is liable to replenish any shortfall that might occur in the Trust Fund. The absence of any such liability defeats a claim of taxpayer standing. See Jordan and Broxton, supra. In attempting to distinguish Jordan, Pate argues that “Jordan simply does not control in a situation such as this, where a member of the class being benefitted by a trust is bringing suit to protect the capital of that trust from mismanagement.” Pate’s brief, at 21-22. Although this argument is relevant to Pate’s claim of standing as an intended beneficiary of the Trust Fund, it is irrelevant to his claim of standing as a taxpayer.
We now turn to Pate’s claim of standing as an intended beneficiary of the Trust Fund. As stated in Amendment No. 450, § 1, the Trust Fund was created “[f]or the continuing benefit of the state of Alabama and the citizens thereof.” Thus, according to Pate, he, as does “each and every” Alabama citizen, has a “vested right” in the moneys derived from the assets of the Trust Fund. Pate’s brief, at 20, 24. Pate admits that the Alabama Constitution does “not promise that any amount of trust-generated funds will be spent on projects that personally benefit [him] to a degree greater than other Alabama citizens.” Pate’s brief, at 27. However, according to Pate, “any citizen of the State of Alabama is a beneficiary of the ... Trust Fund [and] has standing to bring suit to prevent the mismanagement of that trust.” Pate’s brief, at 25. We disagree.
It is obvious that Pate does not allege that he has suffered the “actual or imminent, particularized, concrete, and palpable injury,” which is necessary to support a finding of standing. Town of Cedar Bluff, 904 So.2d at 1261. Although Pate may be a member of the community to be benefited by the Trust Fund, he cannot demonstrate a “sufficient special interest in [its] enforcement [to entitle him] to institute a suit as to that trust.” Rhone, 986 So.2d at 377. Indeed, his argu *840 ments belie any contention that his interest is “special” in any way. By his own admission, Pate’s interest is no greater than that of millions of other Alabamians, all of whom may benefit, directly or indirectly, from the expenditure of the income derived from the assets of the Trust Fund. “ ‘It is well established that persons are not entitled to sue if their only benefit from the enforcement of the trust is that shared by other members of the public.’ ” Hicks v. Dowd, 157 P.3d 914, 920 (Wyo. 2007) (quoting In re Clement Trust, 679 N.W.2d 31, 37 (Iowa 2004)).
In support of his argument that he has standing as a beneficiary of the Trust Fund, Pate likens his status to that of the plaintiff in Lee v. Bronner, 404 So.2d 627 (Aa.1981). In that case, this Court held that a “contributing member of the [State] Employees’ Retirement System” had standing to bring an action alleging “dereliction of duty and statutory violations concerning the retirement fund.” 404 So.2d at 629. However, unlike Pate, the member had “contributed his own money to the retirement fund,” and, thus, had a “direct pecuniary interest” in the management of the fund. Id. Indeed, Pate’s situation is more analogous to that of the plaintiff in Knutson v. Bronner, 721 So.2d 678, 680 (Ala.1998), in which this Court held that “a taxpayer who is not a member of the [Retirement Systems of Aabama] has [no] standing to bring an action against [its] chief executive officer.”
In conclusion, Pate asks: “Finally, who would have standing to bring suit if not Pate or some other similarly situated citizen?” Pate’s brief, at 28. The officials argue that the direct beneficiary of 1% of the oil and gas capital payments — i.e., the Lands Division of the Department of Conservation — would suffer “the first and most quantifiable injury,” State’s brief, at 30, and that the funds constitutionally entitled to receive portions of the income from the Trust Fund would also be injured. Pate does not contest the standing of these entities; instead, he merely questions the strength of their incentives to sue the officials. His doubts about their incentives in no way cloak Pate with standing that otherwise cannot be established. Athough Pate may be quite interested in what he perceives to be a problem, he has no standing to sue the officials under the facts of this case.

III. Conclusion

For the foregoing reasons, the preliminary injunction entered against the officials is vacated, and the action filed by Pate is dismissed. Further, because a void order will not support an appeal, this appeal is dismissed.
ORDER VACATED; ACTION DISMISSED; AND APPEAL DISMISSED.
COBB, C.J., and LYONS, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
BOLIN, J., concurs specially.
SEE, J., concurs in the result.

. Although Amendment No. 450 has been incorporated into the Alabama Constitution of 1901 as § 219.02, for ease of reference, we will continue to refer to § 219.02 throughout this opinion as Amendment No. 450.